**In re SEALEY BROTHERS, a Missouri Partnership, Debtor.**

**SEALEY BROTHERS, Plaintiff,**

v.

**FARMERS HOME ADMINISTRATION, Defendant.**

**Bankruptcy No. 87–01933.**
**Adv. No. 93–5006.**

United States Bankruptcy Court,
W.D. Missouri.

Aug. 30, 1993.

Stephen B. Strayer, Liberty, MO, for plaintiff.

Judith M. Strong, U.S. Dept. of Justice, Kansas City, MO, for defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Sealey Brothers, a Missouri partnership (debtor), brings this adversary proceeding to void the lien of Farmers Home Administration ("FmHA") on the partnership's farm real estate. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the lien of FmHA is void as to the farm real estate and FmHA is directed to file a deed of release with the appropriate Recorder of Deeds in Gentry County, Missouri releasing its lien on the partnership's farm real estate. I deny debtor's request to permanently enjoin FmHA from pursuing any claim it may have against the individual partners on the discharged debt.

### FACTUAL BACKGROUND

The Sealey brothers, Larry and Jerry, began farming as a partnership in 1964. The partnership acquired eighty acres of land in 1969 from Roy Witt by land contract which listed the owners of the eighty acres as Larry M. Sealey and Jerry W. Sealey. Mr. Witt's attorney prepared the land contract. The partnership made all the payments under this land contract. The partnership acquired an additional 566 acres in 1970. The sellers also prepared these documents which list Larry M. Sealey and Jerry W. Sealey as the owners of the real estate. The partnership borrowed $25,000 from the First State Bank of King City, Missouri (the "Bank") for this purchase and the sellers financed the remainder. The partnership made all the payments on this mortgage. In 1977, the partnership refinanced the real estate through the Federal Land Bank ("FLB") giving FLB a first lien. That document lists the owners of the 646 acres as Larry M. Sealey and Jerry W. Sealey. The Bank also held a first lien on all the partnership's livestock and equipment. The brothers drafted a written partnership agreement on October 1, 1980, when they applied for an additional loan from the Bank. That document states in paragraph three that:

3. The parties agree that the partnership itself owns no real estate whatsoever, which is to say that the real estate involved in the operation of the partnership is Co-owned by the individual partners in their status as individuals, that such form of ownership shall continue, and in no way shall the partnership itself acquire any interest in said real estate. The parties hereto shall furnish said Co-owned farm real estate for the use of the partnership during the entire partnership period.

Def.Exh. # 1 ¶ 3. Both Larry and Jerry Sealey testified that this document was

prepared at the insistence of the bank, by the bank's attorney.

There were droughts in 1984, and 1985, and the partnership was unable to service its debt with the Bank. On May 17, 1984, Larry M. Sealey, Jerry W. Sealey, and Janet M. Sealey personally executed a promissory note to FmHA in the amount of $27,270 with interest at five percent per annum for debt reduction at the Bank. On April 2, 1985, Larry M. Sealey, Jerry W. Sealey, and his wife Janet M. Sealey also personally executed a promissory note to FmHA in the amount of $36,250 with interest at five percent per annum for debt reduction at the Bank. The loans were secured by a second mortgage on the 646 acres of farm real estate. The loan documents are signed by Larry M. Sealey and Jerry W. Sealey for Sealey Brothers, a partnership, and individually by Larry M. Sealey, Jerry W. Sealey and Janet M. Sealey. All payments on these two loans were made by the partnership.

The partnership obtained annual crop financing from the Bank between 1974 and 1985, and the Bank required it to file annual financing statements. Those financing statements always listed the 646 acres as an asset of the partnership.

The Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for the Bank. The FDIC accelerated the debtor's loan, and, in response, this bankruptcy was filed on May 1, 1987. Schedule B–1 listed the 646 acres as an asset of the partnership. A Plan of Adjustment of Debts Under Chapter 12 was filed on July 30, 1987. Article III, ¶ 3 of the Plan dealt with the claim of FmHA as follows:

The claim of FHA secured by a junior lien is valueless, therefore it will be treated as an unsecured claim.

FmHA objected to the plan as proposed, but only on the grounds that the real estate was undervalued by the debtor, not that someone other than the debtor owned the real estate. A plan was confirmed by this Court on November 3, 1987, and modified on February 25, 1988. (Stewart, C.J.) After completing the plan a discharge was granted June 13, 1991.

Citizens Bank and Trust of King City, Missouri ("Citizens") bought the claim of the FDIC. On September 23, 1992, Jerry Sealey and Janet Sealey, husband and wife, and Larry Sealey granted a deed of trust in the 646 acres to Citizens for a principal sum of $326,000. Def.Exh. # 60. All three signed this deed of trust as individuals.

Upon receipt of its portion of these funds, FLB released its first lien on the 646 acres. FmHA refused to release its lien. FmHA now claims its lien is prior in time to the lien of Citizens, that it is owed approximately $70,000, and that it can proceed to foreclosure.

After the discharge was granted, the FmHA sent a notice to Larry and Jerry Sealey threatening to accelerate the debt.

*DISCUSSION*

The first issue to be resolved is whether confirmation of a partnership debtor's plan has res judicata effect, and voids any liens pursuant to 11 U.S.C. § 506(d), when the plan treats real estate as property of the partnership even though documents list it as property of the individual partners. The second issue deals with the liability of the individual partners who cosigned the promissory note and deed of trust.

The dispute in this case stems from the fact that at all times prior to, during, and subsequent to this bankruptcy proceeding, the creditors, debtor, and Court treated the 646 acres at issue here as if it were property of the partnership. There is no dispute that at the time of the bankruptcy, FmHA held a second lien on the 646 acres whether such land was property of the partnership or property of the individual partners. Missouri law provides that:

1. All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property.

2. Unless the contrary intention appears, property acquired with partnership funds is partnership property.

Mo.Rev.Stat. § 358.080(1) and (2) (1968). In interpreting this section, courts have held that the intention of the parties as to ownership of the property controls. In *State Automobile and Casualty Underwriters v. Johnson,* 766 S.W.2d 113 (Mo.Ct. App.1989), the court held that "[t]he true method of determining whether, as between partners themselves, land standing in the names of individuals is to be treated as partnership property is to ascertain from the conduct of the parties and their course of dealing the understanding and intention of the partners themselves, which when ascertained, unquestionably should control." *Id.* at 122 (Citations omitted). The factors the court used in determining the intentions of the parties in *Johnson* were (1) whether the payments on the loan came from partnership funds; (2) whether the taxes and insurance premiums were paid with partnership funds; (3) whether the property was carried as an asset on the partnership books; (4) whether the property was depreciated on the partnership income tax returns. *Id. See also Gates Rubber Company v. Williford,* 530 S.W.2d 11, 15 (Mo.Ct.App.1975). The testimony is undisputed that all loan payments were made from partnership funds. Both Larry and Jerry Sealey testified that they had formed Sealey Brothers Partnership when they commenced farming in 1964. All taxes, insurance premiums, and expenses of the farming operation were paid with partnership funds. The real estate was listed as an asset of the partnership in all financial transactions with the Bank, the FLB, the FmHA, and Citizens. It was also listed as an asset of the estate in bankruptcy schedules and the statement of affairs in the partnership's bankruptcy. The confirmed plan treated the real estate as partnership property.

It is also generally recognized in Missouri that partnership property may be held in the names of one or more individuals. *See, Grissum v. Reesman,* 505 S.W.2d 81, 87 (Mo.1974); Mo.Rev.Stat. § 358.100(3), (4), and (5) (1968). I, therefore, find that it was the intention of the parties that the 646 acres of real estate was property of the partnership at the time the Chapter 12 bankruptcy petition was filed, and that such property was an asset of such debtor.

■ I must next decide the effect of the bankruptcy proceeding on the lien still claimed by FmHA on such real estate.

The Bankruptcy Code ("Code") provides in relevant part that:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such claim.

. . . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void. . . .

11 U.S.C. § 506(a) and (d). At the time the bankruptcy petition was filed the debtor was indebted to the FLB in the amount of $263,112.21. The bankruptcy schedules also reflect a debt to FmHA in the amount of $55,841.38. The first plan proposed by debtor valued the real estate at $200,000. FmHA objected to the $200,000 value attributed to the real estate by the debtors and submitted an appraisal from Darrel L. McCann, Assistant County Supervisor, Farmers Home Administration, on September 28, 1987, which valued the property in the amount of $270,000. On November 3, 1987, this Court entered an Order Conditionally Confirming Chapter 12 Plan So Long As No Creditor Objects Within 21 Days of Service Hereof. In that Order the real estate was valued in the amount of $220,000. The Court further found that the "liquidation analysis, provided in the Plan, shows that unsecured creditors would receive nothing in a straight Chapter 7 liquidation." No creditor objected to the plan as amended by the Order of November 3, 1987.

The plain language of section 506(a) grants a creditor a secured claim only to the extent of the value of the creditor's

interest and renders unsecured any claim which exceeds that value. *See, e.g., In re Leverett,* 145 B.R. 709, 710–11 (Bankr. W.D.Okla.1992); *Kinder v. Security Bank & Trust Co. (In re Kinder),* 139 B.R. 743 (Bankr.W.D.Okla.1992). The Order of this Court on November 3, 1987, confirmed the value of the real property securing both the claims of the FLB and FmHA was $220,000. Because the claim of the FLB exceeded that sum, the entire claim of FmHA became unsecured. Pursuant to Section 506(d) of the Code, the lien claimed by FmHA is therefore void.

The confirmed plan also stated that:

The claim of FmHA secured by a junior lien is valueless, and therefore it will be treated as an unsecured claim.

*See* Plan of Adjustment of Debts Under Chapter 12, Art. III, ¶ 3. Plaintiff argues that FmHA's claim is unsecured and as such any debt owed to FmHA was discharged on June 13, 1991, upon completion of the plan. Defendant claims it never agreed to the classification of its claim as unsecured. Section 1227(a) of the Code deals with the effect of confirmation and provides:

(a) Except as provided in section 1228(a) of this title, the provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, whether or not the claim of such creditor, such equity security holder, or such general partner in the debtor is provided for by the plan, and whether or not such creditor ... has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1227(a). Therefore, the provisions of a confirmed plan bind both the debtor and its creditors "because of the need for finality in determining the rights and duties of the various parties." *In re Grogg Farms, Inc.,* 91 B.R. 482, 485 (Bankr.N.D.Ind.1988). *See also In re Wickersheim,* 107 B.R. 177 (Bankr. E.D.Wis.1989). Other cases refer to the res judicata effect of plan confirmation on all issues which were, or could have been raised during the confirmation process. *See, e.g., Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 873–74 (2nd Cir.1991); *Christopher v. American Universal Insurance Group, Inc. (In re Christopher),* 148 B.R. 832, 837 (Bankr. N.D.Tex.1992); *In re Martin,* 130 B.R. 951 (Bankr.N.D.Iowa 1991). In the Eighth Circuit, res judicata bars the relitigation of an claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. *Armstrong v. Norwest Bank, Minneapolis,* 964 F.2d 797, 802 (8th Cir.1992) *citing Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir.1990) *cert. denied* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). The Order of November 3, 1987, confirming the plan, was rendered by the United States Bankruptcy Court, Western District of Missouri. There were no objections to the Order confirming the plan, nor was any appeal taken, so the order became a final order within ten days after the Order took effect. *See* Fed.R.Bankr.P. 8002(a). The confirmation process resulting in a confirmed plan which rendered the claim of FmHA unsecured involved the same parties who are parties to the present litigation. Defendant argues that FmHA never consented to the confirmation of the plan, and that it at all times disputed the value of the real estate. Further, defendant states that the untimely deaths of the presiding judge, the Honorable Dennis Stewart, as well as the Assistant United States Attorney, Rick Griffin, severely prejudiced defendant in this matter. Since my findings in this matter are predicated on the fact that the property at issue was and is property of the partnership, and the Code rendered the claim of defendant unsecured, I fail to see how such prejudice occurred. I, therefore, find that any attempt to relitigate the issue of the treatment of the lien of FmHA by the confirmed plan is barred by res judicata. Further, I find that the junior lien of FmHA is void pursuant to section 506(d) of the Code. As such, FmHA is instructed to deliver to debtor within ten days an appropriate deed of release, in proper form for recording,

which releases the lien of FmHA on the 646 acres of real estate.

 The second issue concerns the liability of the individual partners on the unsecured claim of FmHA. The promissory note dated May 17, 1984, in the sum of $27,270 and the promissory note dated April 2, 1985, in the sum of $36,250 were both negotiated between Sealey Brothers, a partnership and Larry M., Jerry W., and Janet M. Sealey. Def.Exh. # 3 and # 7. Further, both these documents were signed by Larry M. and Jerry W. Sealey for Sealey Brothers, a partnership and by Larry M. Sealey, Jerry W. Sealey, and Janet M. Sealey as individuals. *Id.* Section 524 of the Code provides:

> (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e). Defendant's brief cites numerous cases which hold that a partnership's bankruptcy has no effect on the liability of the individual partners. *See, e.g., In re Western Real Estate Fund, Inc.,* 922 F.2d 592 (10th Cir.1990); *In re Bracy,* 449 F.Supp 70, 71 (D.Mont.1978); 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 524.01[3] at 524.16–17 (15th ed. 1993). Further, partners in Missouri are jointly and severally liable for partnership debts. *See* Mo.Rev.Stat. § 358.150 (1968).

Plaintiff concedes in his post-trial brief that "whereas pursuit by FmHA of the individual partners for liability on the partnership loans has a negative effect on the reorganization and fresh start of the partnership debtor, the weight of authority is in favor of FmHA on that issue, and to rule for the Plaintiff on that issue would require this Court to go beyond relief granted in previous reported cases." Plaintiff's Reply to Defendant's Post Trial Brief at 21. I find that to the extent that Jerry and Larry Sealey are liable on the promissory notes to FmHA, such liability is not affected by confirmation of the partnership plan, or the granting of a discharge to such partnership. I, therefore, deny plaintiff's request to permanently enjoin FmHA from pursuing any claim against the individual partners on the discharged debt.

In conclusion, I find that the 646 acres was, and is, property of the partnership, and confirmation of the plan, which treated the property as an asset of the partnership, had the effect of voiding the junior lien of FmHA. I, therefore, declare the junior lien of FmHA absolutely void pursuant to 11 U.S.C. § 506(a) and (d). I further direct FmHA to file a deed of release with the Recorder of Deeds for Gentry County, Missouri forever releasing its lien on the partnership's farm real estate. I direct FmHA to cease and desist any and all efforts to foreclose on the partnership's farm real estate. And finally, I deny debtors request to enjoin FmHA from pursuing any claim it might have against the individual partners in Sealey Brothers Partnership.

An Order in accordance with this Memorandum Opinion will be entered this date.