**In re SPIERS GRAFF SPIERS, an Illinois partnership, Debtor.**

**SPIERS GRAFF SPIERS, Plaintiff,**

**v.**

**Phyllis MENAKO, Defendant.**

**Bankruptcy No. 93 B 09928.**
**Adv. 95 A 00113.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 2, 1996.

---

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

The Debtor–Plaintiff Spiers Graff Spiers ("SGS" or "Debtor"), an Illinois partnership, filed for relief under Chapter 11 of the Bankruptcy Code Title 11, § 101 *et seq.* Its liquidating Plan of reorganization was confirmed. The Debtor filed this Adversary Complaint seeking declaratory judgment in Count I that Plan confirmation had a *res judicata* effect barring a state suit by Phyllis Menako ("Menako") asserting personal liability of Debtor's general partners on her claims. Debtor asserts that those claims by Menako were adjudicated by entry of the confirmation order. In Count II, pursuant to 11 U.S.C. § 105 and Fed.R.Bankr.P. 7065 (Fed.R.Civ.P. 65), Debtor seeks a preliminary and then a permanent injunction enjoining Menako, one of its creditors, from continuing her collection efforts in state court against Debtor's general partners based on promissory notes they signed as individuals.

Menako moved to dismiss both counts of the Complaint for lack of subject matter jurisdiction and for failure to state a claim under Fed.R.Bankr.P. 7012 (Fed.R.Civ.P. 12(b)(1) and 12(b)(6)). In the same Motion, Menako also asks this Court to abstain from hearing this matter.

For reasons stated below, Menako's Motion to Dismiss is granted as to both counts and this Adversary proceeding is dismissed. For the same reasons, Debtor's motion for an injunction is denied. With this case dismissed, the motion to abstain is moot.

## Factual Background Alleged Case History

SGS is a partnership formed to engage in the business of holding various real estate properties while those properties were being rehabbed and sold. SGS has three general partners, Donald Spiers, Gregory Spiers and Mark Graff, Gregory Spiers being the managing partner. On May 6, 1993, SGS filed for relief under Chapter 11 of the Bankruptcy Code.

On April 1, 1991, those same three men assertedly signed two promissory notes, one in the amount of $50,000 and one for $100,000, each evidencing their personal debt owed to Phyllis Menako on her loans to them as individuals. (The Disclosure Statement filed in the SGS-related bankruptcy indicated that these loans were made before the Debtor partnership was created.)

Before Debtor filed for bankruptcy protection, Menako obtained judgment in an Illinois state court on the $50,000 and $100,000 notes which each of the men had signed. Using that judgment, Menako proceeded to record various liens against assets of the Debtor partnership by reason of the judgment against persons who had by then become its general partners. Debtor promptly filed an Adversary Complaint in this Court against Menako, claiming that the lien recordings by Menako were voidable preferences under bankruptcy law. On September 24, 1993, an agreed order was entered to that effect in that Adversary proceeding. However, Menako was allowed by that order to file her claim against the Debtor as a general unsecured claim.

On November 12, 1993, Menako filed her proof of claim as a general unsecured creditor in the amount of $137,387, a claim that Debtor contested. However, on May 9, 1994, the parties submitted a settlement agreement which was read into the record by counsel for SGS. The parties agreed that Menako would have an unsecured claim against Debtor in the amount of $119,840. The parties also agreed, by their counsel on the record, that the settlement made that day did not address the question of whether Menako could, at a later date, proceed

against the partners individually. A written agreed order was submitted by the parties and was entered by the Court on May 11, 1994. That order did not address the issue of whether the partners continued to be personally liable on their promissory notes payable to Menako.

On December 30, 1993, Debtor's Amended Plan was confirmed. The Amended Plan provided for sale of all properties owned by the Debtor. Since then, the Debtor, under management of Gregory Spiers, sold all of its properties and paid out the net proceeds of such sales to its creditors.

Under the confirmed Plan, Class III creditors are unsecured creditors, and collectively they hold over $426,000 in claims. Section 5.01 of Article V of the confirmed Plan provided that, if the unsecured creditors who held allowed claims did not get paid from plan distributions at least 25% of their claims, then each of the three general partners would contribute $5,000 to fund Plan payments to unsecured creditors. This contingency never came into effect since the dividend exceeded 25%.

After the Amended Plan was confirmed, Menako sued Donald B. Spiers, Gregory Spiers, and Mark Graff in the Circuit Court of DuPage County, filing a new law suit for their asserted failure to pay the notes they had individually signed.[1] Mark Graff has since been voluntarily dismissed from the state court proceeding because he filed an individual bankruptcy petition. The Spiers responded by filing a Motion to Dismiss in that court, arguing there, as here, that they were absolved individually from their debts on the two notes by reason of the confirmation order in the SGS bankruptcy and 11 U.S.C. § 524(e). However, the state court judge denied Spiers' Motion, allowing the action there to proceed. In denying the Motion to Dismiss, the state judge pointed out under § 524(e) that discharge of the debtor does not affect the liability of nondebtors. The opinion also held from precedent that "the payment which effects a discharge is not consideration for any promise by the creditors to release nonparty obligors." Order in case number 94 L 1054, Complaint Exhibit D. He concluded that the confirmed SGS Plan did not release its partners from personal liability on their notes. Also, the agreed orders entered in the bankruptcy case were found not to preclude Menako from suing the partners individually. However, the relief available to Menako was reduced from the $150,000 Menako was asking for to $119,840.00, the amount agreed to during the bankruptcy proceeding as being due. *Id.* The Spiers Defendants then requested by way of motion before the Circuit Court of DuPage County leave to take interlocutory appeal on issues raised in their motion to dismiss as denied by that court. That petition for permission to appeal remained pending before the state trial court when briefings were completed on the present motion here.

After the Spiers lost their motion to dismiss in state court, the Debtor filed the instant Adversary Complaint. Its thrust is an effort to obtain the protection for its partners here that the state court judge denied them there.

In Count I, the Debtor seeks a judgment declaring that the order here confirming Debtor's Plan of reorganization had a *res judicata* effect on Menako, barring her from taking any further actions to impose personal liability on the general partners.

In Count II, the Debtor seeks to enjoin Menako's state court action against the Spiers temporarily and permanently. Such injunctive relief would prevent Menako from proceeding in her present state court action and from filing any future state court actions against Donald Spiers and Gregory Spiers. Since Mark Graff is protected by his individual bankruptcy case stay, relief is not sought to protect him through this Adversary case.

The Debtor alleges that allowing the state court action to proceed may result in a judgment against those partners. Such a judgment would assertedly force the two Spiers to file their personal Chapter 7 bankruptcy

---

1. The record is not clear as to why a new suit was filed. It may be that the earlier state court judgment was vacated for some reason. However, the explanation does not affect the issues here.

petition and would thereby impair the managing partner's ability to implement the Amended Plan confirmed by this Court. The Debtor also filed a Motion for a preliminary and permanent injunction seeking the injunction prayed for in Count II.

Menako originally moved that this Court abstain from exercising jurisdiction over the instant Adversary proceeding. She then amended her Motion to ask in the alternative for dismissal of the action or for abstention. Therein, Menako argues that subject matter jurisdiction is lacking over the instant Adversary proceeding. She also argues under the doctrine of comity that this Court can and should give effect to the prior judicial decision of the state judge who sits in a court of competent jurisdiction. Menako reasons that abstention is warranted out of deference and respect to the state court proceedings and because it is more convenient and expedient to ensure uniformity of decision and discourage repeated litigation of the same question issues in different courts.

## DISCUSSION

### Standards on Rule 12(b)(6) Motions to Dismiss

▇▇▇ In order for Defendants to prevail on their motion to dismiss, it must appear from the pleadings that Debtor can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether Debtor will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts in a light most favorable to Debtor when reviewing the Defendants' motions to dismiss. *Gorski v. Troy,* 929 F.2d at 1186; *Corcoran v. Chicago Park District,* 875 F.2d 609 (7th Cir.1989); *Ross v. Creighton University,* 740 F.Supp. 1319, 1326 (N.D.Ill.1990).

### *Jurisdiction*

This dispute actually arises between non-debtor parties, even though the Debtor brings the action. The Debtor is asking for declaratory relief and for a temporary and a permanent injunction enjoining a state court action filed by a creditor against two of its general partners. If jurisdiction lies here, the matter would be before the Court pursuant to 28 U.S.C. § 157 and be referred here by the District Court under Local District Court Rule 2.33. The first issue is whether subject matter jurisdiction lies here.

In Count I of the Complaint, the Debtor seeks a judgment declaring that this Court's order confirming Debtor's Plan of reorganization had a *res judicata* effect on Menako, barring her from taking any further actions to impose personal liability on the general partners. The Debtor claims that Menako was bound by the Plan, that the Plan barred her further collection efforts, and that its partners are no longer personally liable on the notes they signed because her claims were conclusively adjudicated by entry of the confirmation order.

In Count II, the Debtor claims that success in Menako's state court suit will impair its managing partner, Gregory Spiers, from effectively conducting Debtor's liquidation as provided in the Amended Plan. It therefore asserts core jurisdiction under 28 U.S.C. § 157(b)(2)(A) since the declaratory and injunctive relief sought would issue to ensure efficient administration of the estate.

▇▇▇ Menako's motion to dismiss disputes Debtor's asserted jurisdiction because bankruptcy courts do not ordinarily have jurisdiction over disputes between non-debtors. Generally, they cannot decide disputes between non-debtors where the dispute does not involve property of the estate, does not affect administration of the estate, and resolution of the inter-creditor dispute will not affect recovery of creditors under a confirmed plan. *See Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161–62 (7th Cir. 1994); *In re Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987); *In re Kubly,* 818 F.2d 643, 645 (7th Cir.1987). However, where the administration of the case is impeded, a bankruptcy judge may grant some relief in a dispute

between non-debtors so as to avoid or delay the problem. Jurisdiction may also be exercised in cases where provisions of a reorganization plan have been violated, *In re Pettibone Corp.*, 121 B.R. 801, 804 (Bankr.N.D.Ill. 1990) (finding jurisdiction in a suit for declaratory judgment between two non-debtors where relief was sought on basis of a violation of the confirmed plan), or where resolution of the dispute turns on interpretation of the bankruptcy court's orders. *Bannister Bank & Trust v. City Management Company, (In re AmerEco Environmental Services, Inc.)*, 138 B.R. 590, 592 (Bankr.W.D.Mo. 1992).

 Jurisdictional authority of a bankruptcy judge is sharply reduced following confirmation. *Pettibone Corporation v. Easley*, 935 F.2d 120, 122 (7th Cir.1991) (jurisdiction lacking to consider stay annulment post-confirmation when that did not affect plan implementation). However, as found by many authorities, jurisdiction is retained to a limited extent post-confirmation to ensure that reorganization plans are implemented. *See, e.g., Goodman v. Phillip R. Curtis Ent.*, 809 F.2d 228, 232 (4th Cir.1987) (Bankruptcy Code § 1142 "limits the authority of the court to matters concerning the implementation or execution of a confirmed plan");[2] *Blair v. Finan (In re Elless Co.*, 174 F.2d 925, 929 (6th Cir.1949) ("In confirming a plan of reorganization, the court may only retain jurisdiction in order to protect its decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation …"); *Chase Manhattan Bank v. Sultan Corp. (In re Sultan Corp.)*, 81 B.R. 599, 602 (9th Cir. BAP 1987) ("The confirmation of a Chapter 11 plan does not automatically terminate the jurisdiction of the bankruptcy court … The court must retain some juris-

diction after confirmation to ensure that the plan is properly consummated." (citations omitted)); *General Motors Acceptance Corp. v. Fortner Oilfield Serv., Inc. (In re Fortner Oilfield Serv., Inc.)*, 49 B.R. 9, 10 (Bankr. N.D.Tex.1984) ("[T]he court maintains [post-confirmation] jurisdiction sufficient to oversee the execution of the plan … However … there are certain preconfirmation incidences of jurisdiction that are lost or altered by the confirmation." (citation omitted)); *In re Morgan & Morgan, Inc.*, 24 B.R. 518, 521 (Bankr.S.D.N.Y.1982) ("The order of confirmation marked the commencement of the period when a debtor is weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to postconfirmation matters."); *In re Westholt Mfg., Inc.*, 20 B.R. 368, 372 (Bankr. D.Kan.1982), *aff'd sub. nom. U.S. v. Redmond*, 36 B.R. 932 (D.C.Kan.1984) ("At confirmation, all the property of the estate is vested in the debtor, thereby terminating the estate's existence, although the court has continued jurisdiction under section 1142 to oversee the plan's execution." (footnote omitted)); *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203, 204 (Bankr.N.D.Ohio 1981) ("A confirming court's jurisdiction is limited to matters concerning the operation of the plan.").

Thus, a bankruptcy court's retention under the Bankruptcy Code of post-confirmation jurisdiction, while limited, exists to ensure proper execution and consummation of the debtor's plan. As stated in *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373 (Bankr. E.D.Pa.1988),

Whether emanating from the general power of courts to enforce their decrees, *see generally* 11 U.S.C. § 105(a),[3] or from

---

**2.** Bankruptcy Code § 1142 provides:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court. (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satis-

faction of any lien, that is necessary for the consummation of the plan.
11 U.S.C.A. § 1142 (West Supp.1992).

**3.** Code § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination neces-

specific bankruptcy code sections such as 11 U.S.C. § 1112 (allowing for conversion or dismissal after confirmation), § 1127 (allowing for plan modification after confirmation), § 1142 (allowing for plan enforcement postconfirmation), and § 1144 (allowing for revocation of confirmation), there exists a residue, albeit limited, of court authority over a confirmed chapter 11 case.

93 B.R. at 377 (citations omitted).

Code sections 1112, 1127, 1142, and 1144, cited in *In re Cinderella Indus. Inc.,* are implemented through application of Fed. R.Bankr.P. 3020(d), which provides that "[n]otwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate."

Accordingly, jurisdiction lies over certain disputes, even those arising post-confirmation, that may affect a former Chapter 11 debtor's chances of successfully implementing its confirmed plan of reorganization.

 However, there is neither jurisdiction nor authority for what the Debtor asks in Count I: review the Confirmed Plan so as to decide and declare a non-debtor's liability, even though that issue does not affect implementation of the confirmed Plan. Under authority of *Pettibone, supra,* 935 F.2d 120, and the reasoning of the Seventh Circuit panel in that case, jurisdiction appears to be lacking over Count I.

In Count II, the Debtor seeks to enjoin the state court action so as to protect the ability of its principals to carry out its Plan. It rests this claim for injunctive relieve on "arising in" subject matter jurisdiction under 28 U.S.C. § 1334. *See In re Spaulding & Co.,* 131 B.R. 84, 88 (N.D.Ill.1990) (Schmetterer, J.) and cases cited therein defining "arising in" jurisdiction. Consequently, Count II calls on this Court to exercise authority over a core proceeding under 28 U.S.C. § 157(b)(2)(A). *See Dearborn Process Service, Inc., v. Storner (In re Dearborn Process Service, Inc.),* 149 B.R. 872, 878 (Bankr.N.D.Ill.1993) (Schmetterer, J.) (a

complaint seeking an injunction to protect the reorganization process is a core proceeding); *Manville Corporation v. Equity Security Holders Committee (In re Johns–Manville),* 801 F.2d 60, 64 (2d Cir.1986) (request for injunction to enjoin state court proceeding which might affect the administration of estate is core proceeding); *Apollo Molded Products, Inc. v. Kleinman (In re Apollo Molded Products, Inc.),* 83 B.R. 189, 191 (Bankr.D.Mass.1988) (complaint seeking an injunction to protect reorganization process is a core proceeding as a matter "concerning administration of the estate" under 28 U.S.C. § 157(b)(2)(A)).

Additionally, the Debtor claims authority to seek relief from this Court pursuant to Art. XII, paragraphs 13.00 and 13.03 of the Debtor's Amended Plan, which this Court confirmed. These sections of the Amended Plan reserve post-confirmation jurisdiction for the purpose of "[t]he completion or adjudication of any and all adversary or contested proceedings now or hereafter arising." However, a Plan may not delegate unlimited authority to a bankruptcy judge, and that provision is meaningful only to the extent that core jurisdiction is otherwise found.

To sum up: Jurisdiction over Count I is doubtful, but jurisdiction appears to be properly asserted as a basis for acting on Count II.

### *Declaratory Relief (Count I)*

While jurisdiction appears doubtful as to Count I, that count should also be dismissed for failure to state grounds for relief as shown by the following analysis.

 Debtor seeks a judgment which declares that the confirmation order had a *res judicata* effect barring any further actions to impose personal liability on its general partners. Complaint ¶ 16, § 1. It also seeks a judgment declaring that confirmation of the Amended Plan released the general partners of any debts they may have owed to creditors who participated in the plan and whose claims were "conclusively adjudicated

---

sary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West Supp.1992).

by the entry of the order confirming SGS's plan of reorganization." Complaint ¶ 17, § 2. Apart from jurisdictional questions, this Count is also dismissed because the Amended Plan does not contain any language that might be construed to bar creditors from collecting a debt from any of the Debtor's general partners. Further, as a matter of law, confirmation of the Amended Plan did not, by itself, erase any personal liabilities of the general partners as individuals.

Menako's participation in the Amended Plan does not block her from suing the partners on notes they personally signed. A plan of reorganization creates legally enforceable rights upon its confirmation. 5 Collier on Bankruptcy, ¶ 1141.01[1] at 1141–5 (15th ed. 1994). However, even assuming, *arguendo*, that a plan can create an imposition against third parties as to claims on which bankruptcy jurisdiction exists, there is no language in this Debtor's Amended Plan that bars Menako from suing any of its general partners.

The Debtor argues that § 5.01 of the Plan gives rise to an injunction which prevents creditors from suing general partners. It claims that, since Menako voted for the Plan, this injunction is consensual and enforceable against Menako. Its difficulty in this regard comes from the lack of any such plan provisions.

Section 5.01 provides for payments of $5,000 by each partner in lieu of filing a Chapter 7 petition if Class III creditors do not get 25% or more of their claim.[4] Debtor contends that Menako cannot sue the partners personally since Menako is a Class III creditor and may receive the benefit of the $5,000 payments which were pledged by the partners who thereby hoped to avoid filing their own personal bankruptcies. According to the Debtor, § 5.01 should be read to operate as a injunction on a creditor who had an allowed claim in bankruptcy and who was classified as an Class III creditor. However, § 5.01 simply does not say what the Debtor suggests it says. It only states that, if unsecured creditors do not get 25% or more of their claims, the partners shall each contribute $5,000 from personal assets to Debtor's estate for distribution to Class III creditors instead of filing personally under Chapter 7 of the Bankruptcy Code. Section 5.01 does not refer to any restraints on the rights of creditors to sue the partners individually. Certainly, any permanent injunction in the Plan operating to restrain rights of creditors to sue the general partners post-confirmation would have contained clear language to that effect and should have been clearly disclosed in the Disclosure Statement. Plaintiff's strained reading of the cited Plan provision is no basis to create *sub silentio* the injunction it seeks to have recognized.

Menako asserted in the bankruptcy proceeding that her claims against the three individuals somehow became as well a claim against the partnership. How or why she came to that conclusion does not matter because Debtor agreed to allow her claim against the partnership.

Under Illinois law, partners are personally liable for debts of a partnership. 805 ILCS 205/15. This right cannot be overcome by the language of Plan § 5.01, which did not bar creditors of SGS from suing the general partners at a later date for any deficiency.[5]

---

4. Section 5.01 states:
 5.01. Holders of Class III General Unsecured Claims shall be paid prorata portions of the proceeds remaining after the appropriate payments to holders of Allowed Secured Claims (Class II) and payment of all Unclassified Claims, and Class I claims. After all assets are liquidated, should Class III claimants receive less than 25% of their, allowed claims, each Partner shall, in lieu of liquidating their unsecured nonexempt assets in a personal Chapter 7, contribute and additional $5,000.00 from personal assets for distribution to Class III creditors.

5. Even had § 5.01 set forth an injunction against suing the debtor's general partners, the validity

of such a permanent injunction would be questionable *as against parties over which no jurisdiction exists who did not consent thereto*. *See American Hardwoods, Inc. v. Deutsche Credit Corporation (In re American Hardwoods, Inc.)*, 885 F.2d 621, 623 (9th Cir.1989) (bankruptcy court lacked jurisdiction and power to enjoin permanently, beyond confirmation of reorganization plan creditor from enforcing state court judgment against non-debtor guarantors of Chapter 11 debtor); *Feld v. Zale Corporation (In re Zale Corporation)*, 62 F.3d 746, 761–63 (5th Cir.1995) (permanent injunction against third-party contract claims effectively discharged debts of non-debtor and was therefore in excess of bankruptcy court's authority); *In re Elsinore Shore Associ-*

Nor did Debtors include clear language in Plan § 6.07[A](v) of the Amended Plan regarding personal liability of its partners on the notes allegedly due to Menako, although that is the injunctive provision contained in the confirmed Plan. Sections 6.07[A](v)(a) & (c) of the Amended Plan provides:

(v) Confirmation of the Plan shall permanently enjoin:

(a) The commencement or continuation, including the commencement or employment of process, of any judicial, administrative, or other action or proceeding against the Debtor or the Debtor's Partners *with respect to property of the Debtor's estate,* that was or could have been commenced before the Confirmation Date, or to recover a claim against the Debtor or the Debtor's Partners *with respect to property of the Debtor's estate* that arose before the Confirmation Date.

(c) Any act to collect, assess, or recover a claim against the Debtor or the Debtor's Partners *with respect to property of the debtor's estate,* that arose before the Confirmation Date.

(Emphasis in the original).[6]

This language in sections 6.07[A](v)(a) and (c) contradicts the Debtor's convoluted interpretation of § 5.01 of the Amended Plan. Section 6.07 addressed the injunction issue specifically and barred only future actions "with respect to property of the Debtor's

Estate"). No provision of the confirmed Plan addressed personal liability of the general partners post-confirmation, and therefore it cannot be found that the Amended Plan operates as an injunction against Menako suing the general partners in state court.

The fact that Menako participated in the Plan as a Class III unsecured creditor holding an unsecured claim against SGS in the amount of $119,840 did not affect her right to sue the general partners individually post-confirmation. The Plan cannot have any *res judicata* effect if the issue of the general partners' personal liability on the notes was not addressed and litigated as part of the confirmation process. The parties specifically denied in court that the Agreed Order which settled Menako's claim against the estate as unsecured in the amount of $119,840 addressed in any way the issue of the general partners'· personal liability on the notes.[7] The confirmed Plan itself did not do so.

■ Accordingly, Menako's participation in the Amended Plan and Agreed Order had no *res judicata* effect as to whether Menako may sue the Spiers on the notes in state court after the Plan confirmation date. To apply *res judicata,* three elements must exist: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or privies in the two suits. *Wade v. Hopper,* 993 F.2d 1246, 1251

ates, 91 B.R. 238, 252 (Bankr.D.N.J.1988) (proposed Chapter 11 plan improperly called for creditors to release their claims against third-party non-debtors and could thus not be confirmed).

6. The version of Debtor's plan which was confirmed included the indicated underlining. The Debtor submitted this confirmed Plan with its complaint, designated as Exhibit A.

7. The parties engaged in the following colloquy with the court during the May 9, 1994, adversary proceeding regarding the amount of Menako's claim. At the request of the parties, the court entered an Agreed Order settling the dispute. The parties stated on the record:

THE COURT: Are there any other issues between the parties?

MR. INGRAM (counsel to Debtor): No, your Honor, that was everything.

MR. WHELAN: Well, Judge, against the Debtor there are no other issues.

MR. INGRAM: There is an issue as to whether or not Ms. Menako can file any further action against any individual such as John Spiers, Greg Spiers or Mark Graff in any state court action,

THE COURT: Are you counsel simply saying that that's an issue reserved for another day?

MR. INGRAM: That's correct your Honor.

MR. WHELAN: Yes.

THE COURT: Okay. There's nothing expressed between you resolving that issue; is that correct?

MR. INGRAM: There's nothing expressed in this lawsuit resolving that issue.

THE COURT: Is that right, counsel?

MR. WHELAN: Judge, there is nothing expressed in this bankruptcy proceeding with regard to that; that's correct.

THE COURT: All right. Fine. Some issues get reserved for another day.

(7th Cir.1993), *citing Smith v. City of Chicago*, 820 F.2d 916, 917 (7th Cir.1987). The parties here obviously did not litigate the question of the partners' personal liability before this Court and expressly reserved that question for another day.

■ Furthermore, § 524(e) [8] of the Bankruptcy Code specifically restricts the effects of a confirmation order on non-debtors. Section 524(e) bars an inference that a creditor's participation in a plan of reorganization by filing a claim bars it from pursuing claims against non-debtors. There is some disagreement among courts as to the effect that § 524(e) has on the authority of bankruptcy courts to enjoin lawsuits against third party non-debtors. But that provision at least stands for the proposition that, unless rights of creditors against third parties are expressly addressed in the plan, a plan of reorganization and the resulting discharge of a debtor does not affect rights that creditors may have against third party non-debtors. 3 Collier on Bankruptcy ¶ 524.05, 524-34 (15th ed. 1994) ("it has repeatedly been held that the discharge has no effect on the liability of a non-debtor, co-debtor or guarantor of the discharged debt") citing at n. 3, *Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346 (5th Cir.1989); *Underhill v. Royal*, 769 F.2d 1426 (9th Cir.1985); *United States v. Stribling Flying Service*, 734 F.2d 221 (5th Cir.1984); *see also Sealey Brothers v. Farmers Home Administration (In re Sealey)*, 158 B.R. 801 (Bankr.W.D.Mo.1993) (discharge of Debtor partnership does not affect the liability of the partners because of § 524(e)); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir.1990) (finding that "[n]either the confirmation of a plan nor the creditor's recovery (or partial satisfaction) thereunder bars litigation against third parties for the remainder of the discharged debt); *cf. United States v. Blumenfeld*, 128 B.R. 918 (E.D.Penn.1991) (confirmed plan has no *res judicata* effect regarding lawsuit against general partner of debtor partnership since debtor and partnership are two different entities.)

■ Consequently, because the Amended Plan does not contain a specific provision regarding enjoining lawsuits against the general partners, confirmation of the Plan cannot be said to affect or restrict Menako's ability to sue the partners. Count I therefore fails to state a cause of action or basis for relief. It will therefore be dismissed on two grounds: both for lack of jurisdiction and for failure to allege a basis for relief.[9]

### *Injunctive Relief (Count II)*

The Debtor seeks in Count II a Temporary Restraining Order and Preliminary and Permanent Injunction against Menako to prevent her from proceeding in her present state court action, as well as any future state court action against the individual Spiers.

■ Under 11 U.S.C. § 105, the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out provisions" of the Code. 11 U.S.C. § 105(a). However, this power may be exercised only "within the confines of the Bankruptcy Code." *In re Lloyd*, 37 F.3d 271, 274 (7th Cir.1994) (*citing Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). A bankruptcy judge does not have "free-floating discretion" to create rights outside the Code, *In the Matter of Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 791 F.2d 524, 528 (7th Cir.1986), but may only exercise equitable powers in a manner consistent with the Code.

---

8. Section 524(e) states:
 (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

9. In this case, the Debtor would not prevail under Count I, even if jurisdiction were clear and the Count stated a basis for relief. In that event, abstention would have been ordered. It is clear that one of the reasons why the Debtor filed this action, maybe the only reason, is because the general partners who control it failed in their state court litigation. Since the state court seems to have had jurisdiction over Menako's suit, abstention would have been proper in this case. *See Indiana Lumbermens Mutual Insurance Co. v. Rusty Jones, Inc. (In re Rusty Jones, Inc.)*, 124 B.R. 774, 779 (Bankr.N.D.Ill.1991) (forum shopping is one of the main factors which courts consider when deciding whether to abstain under 28 U.S.C. § 1334(c)(2)).

*In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993). In *Ahlers,* the Supreme Court made clear that "whatever equitable powers remain in the bankruptcy courts must and can be exercised within the confines of the Bankruptcy Code." *Ahlers,* 485 U.S. at 206, 108 S.Ct. at 969.

■ As earlier noted, jurisdiction lies to enter injunctions to protect implementation of a confirmed Plan in Chapter 11 of the Bankruptcy Code. That jurisdiction may properly be exercised only where necessary to protect plan implementation from powerful activity by third parties that directly impedes the Plan. *See, e.g., Rustic Manufacturing, Inc. v. Marine Bank Dane County, (In re Rustic Manufacturing, Inc.),* 55 B.R. 25, 26 (Bankr.W.D.Wis.1985) (the continuation of lawsuit filed post-confirmation on personal guarantees given by Debtor's four principal managers would have a significant impact on the debtor's chances to reorganize); *In re United Model Distributors, Inc.,* 1992 WL 503595 at *6 (Bankr.N.D.Ill.1992) (denied motion to dismiss prayer for injunctive relief filed by Debtor enjoining lawsuit against Debtor's vice-president where the complaint showed that a vice-president's efforts on behalf of Debtor post-confirmation would otherwise be seriously frustrated).

■ However, while courts have authority to enjoin actions against third parties such as co-debtors and guarantors, this form of injunctive relief is "an extraordinary remedy to be granted only when a significant and direct impact on the reorganization proceeding is threatened." *Matter of Pestritto,* 108 B.R. 850, 852 (Bankr.S.D.Ga.1989), *quoting In re Continental Air Lines, Inc.,* 61 B.R. 758, 781 (S.D.Tex.1986); *see also In re University Medical Ctr.,* 82 B.R. 754, 758 (Bankr.E.D.Pa.1988) (burden "upon the non-debtors to meet the necessary criteria [for enjoining actions against them is] very demanding"); *see also In re Joint Eastern & Southern Dist. Asbestos Litigation,* 129 B.R. 710, 842–43 (S.D.N.Y.1991) (collecting cases). Therefore, this remedy is only available when the threat to the administration of the Plan is so immediate and significant that the creditor is seriously impeding the debtor through action against a third party. *See In re River*

*Family Farms,* 85 B.R. 816, 819 (Bankr. N.D.Iowa 1987) ("power to enjoin creditors' actions against a co-debtor or guarantor should only be used in limited circumstances where a determination is made that failure to so enjoin would adversely affect the bankruptcy estate and pressure the debtor through that third party").

■ The authority to enjoin post-confirmation actions against non-debtors under § 105 must also be limited to the period in which the Plan is consummated. The public interest served by issuing injunctions in Chapter 11 cases is the promotion of successful reorganizations. *In re Gathering Restaurant, Inc.,* 79 B.R. 992, 999 (Bankr.N.D.Ind. 1986). After the reorganization is substantially completed, there is no more public purpose to be served by enjoining actions against non-debtors. Indeed, an injunction that extended beyond this time would merely insulate the non-debtor from liability to the creditors, and injunctions should not be used to give permanent relief to non-debtors from their possible liability to creditors. *In re Western Real Estate Fund, Inc.,* 922 F.2d 592, 601–02 (10th Cir.1990); *American Hardwoods, Inc. v. Deutsche Credit Corporation (In re American Hardwoods, Inc.),* 885 F.2d 621, 623 (9th Cir.1989); *Feld v. Zale Corporation (In re Zale Corporation),* 62 F.3d 746, 761–63 (5th Cir.1995); *In re Elsinore Shore Associates,* 91 B.R. 238, 252 (Bankr.D.N.J. 1988). *Cf. In re University Medical Ctr.,* 82 B.R. at 758 ("the Plaintiffs ask us to provide sweeping relief as to all lawsuits against each of the partners indefinitely. We are unaware of any precedent for such indiscriminate application of § 105(a). Thus, we are compelled to deny the Plaintiffs' motion"); *F.T.L. v. Crestar Bank (In re F.T.L., Inc.),* 152 B.R. 61, 64 n. 3 (Bankr.E.D.Va.1993) (temporary rather than permanent injunction was granted to principals of corporate debtor and was issued "only to assist the debtor through a crucial point in the reorganization proceedings"). *See also* Peter M. Boyle, *Non–Debtor Liability in Chapter 11: Validity of Third–Party Discharge in Bankruptcy,* 61 Fordham L. Review 421, 447 (1992) (this type of extraordinary relief may be appropriate in

rare circumstances like *A.H. Robins,* and should not be liberally granted).

Menako relies in part on the Seventh Circuit's decision in *In re Specialty Equipment,* 3 F.3d 1043 (7th Cir.1993). In *Specialty Equipment,* the Court of Appeals was confronted with creditors who were holding debentures sold by the Debtor. The bankruptcy court had confirmed a plan which included a release of various non-debtors from all fraud and securities laws violations that the debenture holders might have. According to the release, by voting for the plan a debenture holder was deemed to have consented to the release. Several debenture holders which voted for the plan appealed the confirmation order, claiming that a bankruptcy court's confirmation of a plan which included a provision releasing a non-debtor of liability contravened 11 U.S.C. § 524(e). The court in *Specialty Equipment* stated that reading § 524(e) to create a broad rule precluding all releases of non-debtors in a reorganization plan would be a misreading of the statute:

> While a third-party release, like the one in *Union Carbide* [*Corporation v. Newboles,* 686 F.2d 593 (7th Cir.1982)] releasing a co-debtor from liability, may be unwarranted in some circumstances, a per se rule disfavoring all releases in a reorganization plan would be similarly unwarranted, if not a misreading of the statute.

*Id.* at 1046. *Specialty Equipment* further explicitly agreed with *In re AOV Industries,* 792 F.2d 1140, 1145 (D.C.1986), which upheld the inclusion of a consensual release in a reorganization plan. However, it can be said that *Specialty Equipment* implied disfavor of non-debtor releases which are included in a plan and which are permanent but non-consensual.[10]

However, there was no consensual release associated with the confirmed Plan here, and the holding of *Specialty Equipment* therefore has little, if any, application to this case.

### Standards for Granting Injunctive Relief

▇▇▇▇ A party seeking a preliminary injunction bears the burden of proving five requisite elements: 1) that there is an inadequate remedy at law; 2) that plaintiff will suffer irreparable harm if the preliminary injunction is not issued; 3) that the resultant harm if the preliminary injunction is not granted outweighs the harm the defendant will suffer if the injunction is granted; 4) that there is a reasonable likelihood of prevailing on the merits; and 5) that the injunction will not harm the public interest. *In re Leber,* 134 B.R. 911, 917 (Bankr.N.D.Ill.1991) (collecting Seventh Circuit authority establishing these elements). The standards for granting a permanent injunction are substantially similar to the standards for preliminary injunctions. *Kashani v. Purdue University,* 763 F.Supp. 995, 997 (N.D.Ind.1991), *citing Chicago & North Western Transport Co. v. Railway Labor Executives Assoc.,* 908 F.2d 144 (7th Cir.1990).

### Application of Standards to the Pleadings

▇▇▇▇ The first requisite element is whether plaintiff pleads a lack of an adequate remedy at law. Some courts have found that debtors did not lack and could not show lack of an adequate remedy at law because the affected non-debtors could file their own bankruptcy petitions. *In re River Family Farms,* 85 B.R. at 819–20; *In re O.H. Lewis Company, Inc.,* 40 B.R. 531 (Bankr.D.N.H. 1984). However, this argument was rejected in *In re Northlake Building Partners,* 41 B.R. 231, 233 (Bankr.N.D.Ill.1984), when the debtor there could not force the non-debtor into bankruptcy. In determining whether an adequate remedy at law exists, courts should not look to the remedies of third parties over whom the plaintiff has no legal control. Here, of course, the Debtor is run by its general partners and absence of control found in *Northlake* is not present here.

10. In *Specialty Equipment,* the court also partly overruled *Union Carbide v. Newboles,* 686 F.2d 593 (7th Cir.1982). *Union Carbide* had held that even consensual releases included in a Plan cannot be enforced because § 16 of the old Bankruptcy Act prohibited discharge of any non-debtors. 686 F.2d at 595. By finding that bankruptcy courts can confirm plans including consensual releases, *Specialty Equipment* partly overruled *Union Carbide's* blanket prohibition on non-debtor releases. In *Union Carbide Corporation v. Newboles,* the court used Bankr.Act, § 16, 11 U.S.C. § 34 to reach this holding. Section 16 of the Act is the precursor to 11 U.S.C. § 524(e) and contains similar language.

Debtor's general partners can indeed individually seek bankruptcy protection, and it makes no real difference here whether a decision to do so is viewed as their decision or Debtor's decision. So Plaintiff, through its general partners, has adequate remedy at law to obtain protection from Menako's efforts, and the Complaint fails to show otherwise.

The second requisite element that must be pleaded is that Plaintiff will suffer irreparable harm if the injunction is not issued. The Debtor claims in this instance that it will be irreparably harmed because its managing partners, Gregory Spiers, would be impaired from effectively conducting Debtor's liquidation if he were lose the state court lawsuit.

In several instances courts have enjoined lawsuits against a non-debtor by creditors where continuation of the lawsuit had a significant adverse effect on Debtor at a crucial time in its reorganization. *In re Johns–Manville Corp.*, 26 B.R. 420, 426 (Bankr. S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984); *In re Kasual Kreation, Inc.*, 54 B.R. 915, 917 (Bankr.S.D.Fla.1985); *In re Gathering Restaurant, Inc.*, 79 B.R. 992, 1000–01; *Monroe Well Service, Inc.*, 67 B.R. 746 (Bankr.E.D.Pa.1986); and *In re Mac-Donald/Associates, Inc.*, 54 B.R. 865 (Bankr. D.R.I.1985).

However, while injunctions may be issued to protect against significant threats to the debtor, they are not issued to protect against the mere threat that a debtor's employee will be psychologically affected or required to devote personal time, effort, and resources in defense. In *In re Apollo Molded Products, Inc.*, 83 B.R. 189, 193 (Bankr.D.Mass.1988); *In re Costa and Head Land Co.*, 68 B.R. 296, 301–02 (N.D.Ala.1986).

Plaintiff clearly failed to demonstrate in its pleading a set of circumstances in which temporary relief might be afforded for the state court suit until the Debtor's Plan is consummated.[11] Moreover, through the efforts of the Spiers post-confirmation, Debtor has now liquidated all of Debtor's assets without aid of any injunction.

Thus, the final standards to be met by one seeking an injunction were not met here: The Debtor's allegations are insufficient to entitle it to relief, and it cannot plead enough to obtain relief, so its chances of prevailing are non-existent. But apart from denying Plaintiff's injunction request for reasons stated above, it is clear that Count II fails to plead a basis for relief and must be dismissed.

### *Abstention Under Count II* [12]

■ If Debtor would have adequately pleaded its request for an injunction, then the alternative motion to abstain would have been resolved. The question of whether a Debtor would be significantly harmed at a crucial time in its reorganization by a lawsuit involves bankruptcy law, not state law, and therefore abstention is not appropriate. *See In re Film Recovery Systems*, 804 F.2d 386, 389 (7th Cir.1986) (federal courts should not abstain from hearing a case where no state law issues are involved); *J.D. Marshall International, Inc. v. Redstart, Inc.*, 74 B.R. 651, 656 (N.D.Ill.1987) (same); *Cf. In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company*, 6 F.3d 1184, 1189 (7th Cir. 1993) (whether proceeding involves unsettled issues of state law is always significant in deciding whether to abstain from hearing a proceeding). Deciding this issue would have been the proper responsibility of a bankrupt-

---

**11.** Specifically, in Count II of the Complaint, paragraphs 19 and 20, Plaintiff merely claims that:

19. If the state court denies the general partners' motion for interlocutory appeal, thereby permitting Menako to immediately proceed in her case against the general partners individually, then there is a strong likelihood that Donald Spiers and Gregory Spiers will be forced to file for personal Chapter 7 bankruptcies. (On September 23, 1994, Mark Graff was forced to file for a personal Chapter 7 bankruptcy, 94 B 19088, by reason of proceedings undertaken by a creditor who was not a creditor of SGS).

20. SGS will be irreparably harmed if Menako is not enjoined from trying to collect from the general partners, since Gregory Spiers, the managing partner of the Partnership, would not be able effectively to conduct the liquidation of SGS properties if he became a Chapter 7.

**12.** As to Count I abstention, see n. 9.

cy court which should not be passed to the state court.

However, Count II is dismissed and the abstention motion is therefore moot.

## CONCLUSION

Pursuant to this opinion, a separate order is entered wherein Count I is dismissed for lack of subject jurisdiction, and alternatively for failure to state grounds for relief; Count II is dismissed for failure to state a basis for relief; the alternative motion for abstention is found to be moot; Plaintiff's motion for injunction is denied; and this Adversary proceeding is finally dismissed with prejudice.