In re LINC CAPITAL, INC., Debtor.

Patrick D. Cavanaugh, as the Estate Representative of Estate of Linc Capital, Inc., Plaintiff,

v.

Martin E. Zimmerman, et al., Defendants.

Bankruptcy No. 01 B 03320. Adversary No. 02 A 01239.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 4, 2003.

Michael G. Gesas, Gesas Pilati, Gesas and Golin, Ltd., Chicago, IL, for Plaintiff.

Howard O. Godnick, Stacy P. Aronowitz, Schulte, Roth & Zabel, LLP, New York City, for Defendants.

### *MEMORANDUM OPINION ON DEFENDANT CHARLES J. ASCHAUER'S MOTION TO VACATE ORDERS*

JACK B. SCHMETTERER,
Bankruptcy Judge.

### BACKGROUND HISTORY

Defendant Charles J. Aschauer ("Aschauer") was a director of the Debtor. Patrick Cavanaugh ("Plaintiff") is the Estate Representative authorized under the confirmed Chapter 11 Plan to pursue claims on behalf of creditors of the estate.

The Debtor's Chapter 11 confirmed Plan fixed July 22, 2002, as the deadline for Plaintiff to file any claims against directors of the debtor ("D & O claims bar date"). The parties agree that confirmation of the Plan fixed that date as a deadline for filing such claims unless it was extended by Court order before it expired. That deadline was twice extended, and this suit against directors was filed before expiration of the second extension.

Aschauer has moved to vacate or amend orders entered by this Court in the related bankruptcy case on July 9, 2002 and August 29, 2002, which extended the bar date for filing claims against outside directors and officers of the Chapter 11 Debtor, Linc Capital, Inc.("Linc or Debtor").

The orders at issue here reset the deadline date first to September 3, 2002, and then to September 9, 2003. The Plaintiff and certain co-defendants, not including Aschauer, had sought those extensions to allow time for those parties to negotiate a settlement with the Debtor's corporate insurer on its directors and officers liability ("D & O") policy. The settlement talks were unsuccessful, and on September 9, 2002, Plaintiff filed the instant Adversary Complaint against the directors, including Aschauer, charging breach of fiduciary duty, waste, payment of an improper dividend, breach of contract, and fraudulent transfer.

Aschauer now collaterally attacks the complaint by asserting that this suit against him was not filed by the original deadline, and he was deprived of Fifth Amendment Due Process rights because he was never given notice of motions to extend the deadline and did not agree

thereto. Plaintiff does not contend that Aschauer or any lawyer representing him was sent notices of the motions to extend, but counters that Aschauer had imputed notice of the hearings to extend the bar date because Debtor's insurer under a the D & O policy was aware of the proceedings and was negotiating toward possible resolution of claims against all directors.

Because fact issues could be involved, Aschauer's motion was by court order treated as a Motion for Summary Judgment under Fed.R.Bankr.P. 7056. The parties exchanged briefs and materials pursuant to former Local Rule 402 M and N.[1] For reasons stated below, judgment will issue in Aschauer's favor dismissing him from this proceeding.

## JURISDICTION

Section 105(a) of title 11 U.S.C. gives bankruptcy judges authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code and the court may "tak[e] any action or make[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Hence, authority in this Circuit has held that bankruptcy judges have jurisdiction to modify or vacate their own orders. *Matter of Lintz West Side Lumber, Inc.,* 655 F.2d 786, 789 (7th Cir.1981); *In re Radco Merchandising Services, Inc.,* 111 B.R. 684, 689 (N.D.Ill.1990). They have the equitable power and duty to assure that injustice or unfairness is not done in the administration of the bankrupt estate. *In re Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir. 1980) (quoting *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 84 L.Ed. 281 (1939)).

Therefore, this Court has core jurisdiction to hear the instant motion pursuant to 28 U.S.C. §§ 157 and 1334(a) and the standing referral of District Court Internal Operating Procedure 15(a). Venue lies here under 28 U.S.C. § 1409(a).

## UNDISPUTED FACTS

The following undisputed facts emerge from filings by the parties supporting and opposing summary judgment:

1. Linc Capital is a Delaware corporation that provided specialty financing, equipment leasing, and rental and distribution services to high-tech companies. The Trustee contends that the Defendants engaged in a scheme to divert assets from the company into ventures that they controlled and attempted to conceal their fraud from investors by publishing phony financial data. According to the Trustee, the Defendants cost the company $40 million and forced it into bankruptcy.

2. Defendant Charles J. Aschauer served on the Board of Directors of Linc until he resigned on May 26, 1999.

3. Patrick D. Cavanaugh is the duly appointed representative of the Debtor's estate authorized to bring this Adversary proceeding.

4. Under the Amended Joint Plan of Reorganization, the Debtor and its representative Cavanaugh had until July 22, 2002, to file suit against directors of Linc.

5. Certain Defendants herein, Robert E. Laing, Allen P. Palles, Stanley Green, Curtis S. Lane, Terrence J. Quinn, Mark A. Arvin, and Martin E. Zimmerman (the "Zimmerman Defendants") filed an Adversary Complaint entitled *Zimmerman et al v. Cavanaugh,* No. 02 A 00291 on March

---

1. Effective June 1, 2003, new Local Bankruptcy Rules became effective, but the newly renumbered local rule governing summary judgment procedure was not materially changed.

27, 2002. They sought to use the Debtor's D & O coverage to settle two lawsuits that had been brought against them by investors in Linc. That Adversary was settled on December 26, 2002. Aschauer was not named as a party in that litigation, nor did he participate in the settlement agreement.

6. As part of the settlement agreement with the Zimmerman Defendants, the parties agreed to extend the deadline for filing claims against Directors of Linc from July 22, 2002, to September 3, 2002.

7. Howard Goodnick ("Goodnick") signed the agreement on behalf of Messrs. Green, Quinn and Lane (the "Represented Defendants"). Aschauer had no knowledge or notice of the settlement agreement or the related agreement to extend the July 22nd deadline.

8. Pursuant to their agreement, the parties to the case numbered 02 A 00291 submitted in the bankruptcy case on July 9, 2002, a Joint Motion For Modification of Amended Joint Plan of Reorganization to Reset the D & O claim deadline. Attorney Goodnick signed the agreement on behalf of the Represented Defendants. Aschauer was not sent and did not receive service of the motion to extend the bar date. He was not present at any hearings related to the extension, nor was he served, nor did he receive a copy of the proposed or final order to extend the bar date, nor did any attorney representing him participate or receive notice. He was not then represented by Goodnick or his law firm.

9. On or about July 14, 2002, Plaintiff sent counsel for the Zimmerman Defendants a pre-suit mediation demand. That counsel accepted the demand on behalf of the Represented Defendants he still represented. Aschauer was not represented by that attorney and did not receive and was not sent the demand. Aschauer did not participate in the mediation or settlement discussions in person or by any representative, nor was he invited to do so. He first became aware of the mediation and settlement discussions in October 2002 and September 2002, respectively, after he was summoned as a Defendant in this Adversary proceeding.

10. After the mediation, the participating parties exchanged written submissions outlining their claims and defenses. Michael Truesdale, Cavanaugh's counsel, received a submission on behalf of the Represented Defendants from their attorney Goodnick, but not on behalf of Aschauer whom Goodnick did not represent. Goodnick continued to negotiate on behalf of the Represented Defendants through early September 2002. The parties to the mediation agreed to seek a further extension of the claims bar date in order to facilitate further settlement discussions. They submitted in the bankruptcy case on August 29th a Joint Motion for Further Extension of the D & O Claims Bar Date, which was signed by Goodnick on behalf of the Represented Defendants. As with the first motion for extension, Aschauer was not a party to the motion for the second extension of the claims bar date. Likewise, he was not listed on the service list of the motion for extension of the claims bar date, he never received any copies of the motion before or after the hearing until summoned into this Adversary proceeding, and he was not present at any related hearing. The motion and the resulting order was not served on him.

11. However, the motions presented to the court on July 9th and August 29th stated that "all [directors] . . . have been served with notice of this motion" when in fact Aschauer had not been served in either instance.

12. Plaintiff filed the instant Adversary Complaint No. 02 A 01239 on September 9,

2002. Aschauer is named as a defendant in the Complaint. Prior to that time, Aschauer did not know that Plaintiff planned to assert claims against him.

13. Goodnick met with Aschauer for the first time on October 2, 2002, when Aschauer retained that lawyer's firm to represent him in this case.

14. Additional facts set forth in the following discussion will stand as additional undisputed facts:

## DISCUSSION

### Standards for Summary Judgment

To win summary judgment, a movant must show that there are no genuine issues of fact which need to be resolved at trial and that such movant is entitled to judgment as a matter of law. Fed. R.Bankr.P. 7056(c). This burden is met by identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any" which show that no reasonable factfinder could find for the nonmovant. *Id.; Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994) (a genuine issue exists where reasonable jury could find for nonmovant). In deciding whether there is a triable dispute, the court must construe all reasonable inferences that can be drawn from the facts in favor of the nonmovant. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986). However, the nonmovant cannot avoid summary judgment by merely showing that there are factual issues in dispute; rather, the nonmovant must show a factual dispute whose resolution would affect the outcome at trial. *In re Marino*, 201 B.R. 234, 238 (Bankr.N.D.Ill.1996) (and cases cited). Self-serving statements are insufficient to meet this requirement. *Bank Leumi Le–Israel v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

### Summary Judgment in Favor of Aschauer is Warranted

■ There is no dispute here over whether Aschauer was sent or personally received actual notices of the motions to extend the deadline. Plaintiff concedes that he was not sent and did not personally receive either notice. However, Plaintiff argues despite this fact that Aschauer was imputed to have been given notice because the Debtor's D & O insurer, who insured and was in fact negotiating on behalf of all directors, had notice of the proceedings. It is not contended that the insurer's negotiating attorney represented Aschauer. But apart from contending that the insurer's attorney constructively represented Aschauer, Plaintiff argues that there are triable factual issues regarding whether Aschauer benefitted from extensions of the deadline, and whether he was prejudiced by the two extensions. Plaintiff also argued for more time to do discovery in this case, but has not moved for any further briefing extension to allow particularized discovery relevant to the Aschauer issues.

The issue as to any purported "benefit" that Aschauer received from the extensions is subsumed by the Constitutional imperative of Fifth Amendment Due Process. The key issue for analysis is whether notice to the D & O insurer satisfied the Constitutional requirement of notice to Aschauer.

■ *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) is the seminal case dealing with notice requirements. It teaches:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice **reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and**

to afford them an opportunity to present objections.... The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Id.* at 314–19, 70 S.Ct. 652 (emphasis added).

A review of the "practicalities and peculiarities" of each case will determine whether this standard has been satisfied. *Id.* Drawing upon these principles, the rules of bankruptcy procedure are replete with requirements to give proper notice to interested parties, as evidenced in Fed. R.Bankr.P.2002, 4001, 6004, 7004, 7005, and 9014.

Plaintiff does not challenge Aschauer's assertion that he was an interested party entitled to notice of proceedings to extend the bar date. Thus, the issue presented is whether the "means employed" (*Mullane, Id.*) to notify Aschauer of the proceedings were sufficient to meet the required objective test for notice quoted above.

Sending notification to Aschauer's insurer clearly was not reasonably calculated to apprise Aschauer, under circumstances presented by the undisputed facts, of proceedings to extend the suit deadline. Plaintiff has offered no authority for the proposition that notifying a potential defendant's insurer obviates the need to notify that party of a pending legal proceeding affecting interests of that party. Insurers whose lawyers do not represent insured parties are not surrogates representing and binding the insured.

Moreover, anyone desirous of informing Aschauer about the claims bar date proceedings could easily have notified him. Apparently, Plaintiff originally agreed with this view which is why he twice represented to this court that he had done just that when he sought entry of each order that is in issue here: "The requested extension of the Bar Date will impact only the Movants and the other Ds & Os, *all of whom have been served with notice of this motion.*" Joint Motion For Modification of Amended Joint Plan of Reorganization To Reset the D & O Claims Bar Date ¶ 10 (emphasis added); Joint Motion For Further Extension of the D & O Claims Bar Date ¶ 4 (Same). Those representations to the court were not accurate to the extent they pertained to Aschauer.

Aschauer is argued to have benefitted from the mediation talks between the Trustee and the D & O insurer because if given a choice between allowing the mediation to proceed and being sued, Aschauer would have chosen to let the talks proceed. Well, perhaps he would have, but then again perhaps not. To satisfy Due Process, a party cannot go to court to obtain a continuance affecting the rights of his opponent without first giving the opponent an opportunity to be heard. Otherwise, the fundamental right of notice would be a sham. Instead of establishing a minimum standard for fundamental fairness, Due Process analysis would be reduced to a rather bizarre subjective analysis of outcomes to determine whether a party was indeed harmed or helped by being deprived of notice and the right to appear in court. In this case the extension of deadline without Aschauer's notice or consent violated his Due Process rights to notice, and we need not hold hearings into the remarkable contention that his consequent exposure to this serious lawsuit was helpful rather than harmful to him.

## CONCLUSION

Based on the foregoing, Aschauer is entitled to judgment as a matter of law because this action was time-barred by the confirmed Plan and he is not bound by the extensions that others agreed to. The factual disputes raised by Plaintiff are immaterial since they do not affect the outcome

of his pending motion, which turns on whether Aschauer's fundamental Due Process rights were violated. Thus, there are no material issues for trial and summary judgment is appropriate based on the undisputed finding here that the Plaintiff did not meet the filing deadline as to Aschauer establish by the confirmed Plan.

Judgment for Aschauer will be separately entered herein declaring that the two orders in issue will each be amended to omit his name or any reference to him or any affect on him.