**LINC CAPITAL, INC., Debtor.**

**Patrick D. Cavanaugh, as the Estate Representative of Estate of Linc Capital, Inc., Plaintiff,**

**v.**

**Martin E. Zimmerman, et al., Defendants.**

**Bankruptcy No. 01 B 03320.**
**Adversary No. 03 A 00197.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 14, 2004.

Michael L. Gesas (Gesas, Pilati, Gesas & Golin, Ltd.), David Bryant (Diamond McCarthy Taylor & Finley, LLP), for Movant or Plaintiff.

Timothy J. Chorvat (Jenner & Block), Daniel Lynch (Law Offices of Daniel Lynch), for Respondent or Defendant.

William J. Barrett (Barack Ferrazzano Kirschbaum, et al.), Daniel Zazove (Kaye Scholer), Michael M. Eidelman (Vedder Price Kaufman & Kamholz), trustee.

*MEMORANDUM OPINION ON MO-TIONS OF DEFENDANTS ZIM-MERMAN, PALLES, LFC INC. AND LFC HOLDINGS INC FOR SUMMARY JUDGMENT ON COUNTS V, VI AND VII OF THE SECOND AMENDED COMPLAINT*

JACK B. SCHMETTERER,
Bankruptcy Judge.

This dispute relates to the Chapter 11 bankruptcy case filed by Linc Capital, Inc. ("Debtor" or "Linc"). Linc's Chapter 11 Plan was confirmed on January 9, 2002. The Plaintiff is the Debtor's Estate Repre-

sentative pursuant to the confirmed Chapter 11 Plan, and is authorized to pursue claims on behalf of the Debtor's creditors.

Linc's Estate Representative, Patrick D. Cavanaugh ("Plaintiff") filed this Adversary Complaint against two of Linc's former directors, Martin E. Zimmerman ("Zimmerman") and Allen P. Palles ("Palles"), and also against LFC Holdings, Inc. and LFC Capital, Inc., seeking to recover the value of certain pre-bankruptcy transfers of Debtor's assets. All Defendants except for LFC Capital, Inc., moved for summary judgment on Counts V, VI, and VII of the Second Amended Complaint, asserting that the Debtor's confirmed plan of reorganization and the doctrine of *res judicata* preclude this litigation.[1] For reasons discussed below, the motion is granted as to Defendants Zimmerman and Palles and denied as to Defendant LFC Holdings, Inc.

### BACKGROUND

Linc is a Delaware corporation that provided specialized financing and related services to high-tech companies. Messrs. Zimmerman and Palles are former directors and officers of the Debtor. Plaintiff alleges that in 1997, shortly before Linc's initial public offering, Zimmerman and Palles initiated a series of transactions to divest the Debtor of its assets, ultimately conveying these assets to two corporations under their control, Defendants LFC Capital, Inc. ("LFC") and LFC Holdings, Inc. ("LFC Holdings"). *See* Compl. 03 A 00197. The Plaintiff avers that the transfers to these corporations left the Debtor undercapitalized and accelerated its slide into insolvency and ultimate bankruptcy.

#### *The Directors and Officers Lawsuit*

Apart from this litigation, Plaintiff separately sued several of the Debtor's former officers and directors, including Zimmerman and Palles, in September of 2002 seeking to avoid the 1997 transfers under Illinois state law and the Bankruptcy Code ("D & O lawsuit"). *See* Complaint 02 A 01239. Some of the Defendants in that action settled and entered into a Compromise Settlement Agreement. The Settlement Agreement expressly reserved the Plaintiff's right to pursue future avoidance actions against Linc's directors and officers. Zimmerman and Palles did not sign the Settlement Agreement; they did, however, object to its approval. *See* Pl.'s Exh. A, B. Their objections were overruled and the settlement was approved. An order dismissing the D & O lawsuit was entered on November 17, 2003.

Plaintiff filed this action against LFC, its successor LFC Holdings, and Zimmerman and Palles on January 29, 2003. Plaintiff seeks to recover, *inter alia*, for the alleged fraudulent transfers of 1997. The Defendants now move for summary judgment asserting that the preclusive effects of res judicata based on settlement of the D & O lawsuit precludes this Adversary.

Zimmerman and Palles contend further that the terms of the Debtor's confirmed Chapter 11 plan of reorganization ("Plan") also prohibit the present Adversary. The Plan fixed July 22, 2002 as the bar date for Plaintiff to file any claims against former directors of the Debtor subject to extensions by the Court. That bar date was twice extended, the last time to September 9, 2002. The Defendants contend that the filing of this Adversary Complaint on January 29, 2003 falls outside the bar deadline for asserting causes of action against former directors of the Debtor.

---

1. Palles and Zimmerman moved to dismiss under Rule 7012 Fed.R.Bank.P. with supporting materials; that was treated as motion for summary judgment.

## Pleadings

Plaintiff filed this Adversary Complaint on January 29, 2003. The pending Second Amended Complaint was filed December 11, 2003. Count I alleges that the 1997 transfer of assets were fraudulent transfers and seeks recovery from LFC under 11 U.S.C. §§ 544, 550 and the Illinois Uniform Fraudulent Transfer Act. Count II seeks to avoid as a fraudulent transfer the transfer of certain leases, and seeks recovery from LFC under 11 U.S.C. §§ 544 and the Illinois Uniform Fraudulent Transfer Act. Counts III and IV allege that LFC breached certain contractual obligations to the Debtor. Counts V and VI allege under 11 U.S.C. § 550 that Zimmerman, Palles and LFC Holdings were the beneficiaries or the mediate or immediate transferees of the 1997 transfers and transfers of the lease, and seek recovery of property transferred or the value thereof as damages from each said defendant. Count VII prays that each Defendant, including Zimmerman and Palles, pay Plaintiff's attorneys' fees for the prosecution of this case.

Defendant LFC's answer pleaded six affirmative defenses: that the Complaint is barred by the doctrines of res judicata and/or collateral estoppel; statute of limitations; ratification; laches; estoppel; and waiver. Answ. ¶¶ at 15–16.

On the motion of Defendants Zimmerman, LFC Holdings, and Palles for summary judgment as to Counts V, VI, and VII, the following set of material undisputed facts was compiled from the Debtor's and Defendants' memorandums of law, statements of facts and responses thereto filed pursuant to Rules 7056–1 and 7056–2 of the Local Bankruptcy Rules adopted by the District Court, and the affidavits and attached exhibits used to support the allegations and denials.

## Material Facts as to Which There Is No Genuine Dispute

1. Linc is a Delaware corporation that provided specialty finance, equipment leasing, asset-based financing, and equipment rental and distribution services to high-tech companies. (Compl.03 A 00197 ¶ 13)

2. On February 1, 2001, Linc's creditors filed an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code. The case was converted to Chapter 11 on March 3, 2001.

3. Linc and the Committee of Unsecured Creditors proposed a Joint Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Plan was confirmed on January 9, 2002. (Palles Exh. A)

4. As originally drafted, the Plan released certain of Linc's officers and directors from personal liability claims arising from Linc's insolvency. (Palles Statement of Facts, Exh. G ¶ 4; Pl.'s Resp ¶ 3)

5. These release provisions, however, did not have the support of the Committee of the Unsecured Creditors. (Palles' Statement of Facts ¶ 4; Pl.'s Resp. ¶ 4; Zazove Aff. ¶¶ 4, 6)

6. After extensive negotiations, the release provisions were removed and replaced with a deadline period or bar date after which the filing of any claim against Linc's officers and directors would be prohibited ("D & O Claims Bar Date"). (Palles Exh. A, Art. XI)

7. The Debtor, the Committee of Secured Creditors and the Committee of Unsecured Creditors supported this change. (Palles ¶ 7; Pl.'s Resp ¶ 7; Zazove Aff. ¶ 6)

8. Defendants Zimmerman and Palles are former directors and officers of Linc.

9. Palles served as Chief Financial Officer and a director of Linc from 1997 to 2002.

10. Zimmerman founded Linc and served as Linc's Chief Executive Officer and Chairman of the Board. Zimmerman was also the sole owner, or majority shareholder of LFC and LFC Holdings, and was an officer in control of LFC and LFC Holdings. (Zimmerman Statement of Facts ¶ 3; Pl.'s Resp. ¶ 3; Compl. 03 A 00197 ¶ 5).

11. At the Plan confirmation hearing, Palles testified in support of the plan. His support was based on his understanding and clear terms of the Plan that all claims not filed within the deadline period contained in the confirmed Plan would be barred.

12. The order confirming the Plan ("Confirmation Order") contained several handwritten and typed provisions purporting to amend the Plan. (Zimmerman Exh. G)

13. One purported amendment addressed Article XI of the Plan. It stated that "Article XI is amended by inserting the words Estate Claim 'in lieu of' any suit or action." (Zimmerman Exh. C)

14. As proposed, Article XI had originally stated: "The filing of any suit or action against the Debtor's current or former officers and directors must be initiated on or before the later of (i)180 days after the Effective Date; or (ii) July 15, 2002 or the (sic) such suit or action will be forever barred, waived, and discharged; provided however, that any such suit, action, or proceeding commenced prior to that date may be amended or supplemented in any manner allowed by applicable law." (Zimmerman Exh. C) As amended (Finding No. 13), this deadline was limited to apply only to claims of or on behalf of the bankruptcy estate under the confirmed plan. Under the confirmed Plan "Estate Claims" are defined to exclude avoidance actions such as those pleaded by Plaintiff.

15. The Confirmation Order was entered on January 9, 2002 and the Plan became effective on January 21, 2002.

16. On July 2, 2002 the Debtor, the Debtor's Estate Representative, the Committee of Unsecured Creditors, and former director's and officers of the Debtor filed a Joint Motion for Modification of Amended Joint Plan of Reorganization as to the D & O Claims Bar Date. The motion was granted and an order was entered extending the bar date in Article XI to September 3, 2002. (Palles Exh. H, I)

17. On September 4, 2002 the same parties again sought an extension of that Bar Date. This motion was granted and an order was entered extending the bar date to September 9, 2002. (Zimmerman Exh. B)

18. Plaintiff filed this Adversary complaint on January 29, 2003, after the last deadline date had expired.

### The Directors and Officers Lawsuit

19. The Plan designated Plaintiff Patrick D. Cavanaugh as Linc's Estate Representative ("Plaintiff") and authorized him to bring various claims on behalf of the estate. (Palles' Statement of Facts ¶ 1; Pl.'s Resp. ¶ 1; Zimmerman Exh. C)

20. On September 9, 2002 Plaintiff timely filed the D & O litigation against certain of the former officers and directors of Linc Capital, including Zimmerman and Palles, seeking money damages. (Compl. 02 A 01239)

21. The Plaintiff settled with certain of the Defendants in the D & O litigation, by a Settlement Agreement approved on August 25, 2003.

22. Zimmerman and Palles did not sign the Settlement Agreement. Each filed

separate objections to approval of the Settlement Agreement. (Pl.'s Exh. A, B)

23. Pursuant to the Settlement Agreement, Plaintiff requested dismissal of the D & O litigation. (Zimmerman Exh. B)

24. An order was entered dismissing the D & O litigation with prejudice on November 17, 2003. (Zimmerman Exh. B)

25. Additional facts set forth in the Discussion that follows are not disputed.

## JURISDICTION

### Post-confirmation Jurisdiction

■ Linc's Plan was confirmed on January 9, 2002, and jurisdictional authority of a bankruptcy judge is reduced following plan confirmation. *See Pettibone Corporation v. Easley*, 935 F.2d 120, 122 (7th Cir.1991) (jurisdiction lacking to consider stay annulment postconfirmation when that did not affect plan implementation). Plan confirmation removes the debtor's property from the estate and revests it back in the debtor. *In re Lawndale Steel Co., Inc.*, 90 A 706, 90 A 726, 90 A 737, 1991 WL 242977 at *5, 1991 Bankr.LEXIS 1665 at *14 (Bankr.N.D.Ill. May 2, 1991); *In re Xonics, Inc.*, 813 F.2d at 131 (7th Cir.1987) ("Jurisdiction does not follow the property. It lapses when property leaves the estate ... Otherwise anyone who could trace his title to a bankrupt could invoke federal jurisdiction to settle disputes affecting that property.")

■ Nonetheless, post-confirmation jurisdiction is clearly retained (1) where the debtor's plan provides for retention of jurisdiction and that retention is necessary for implementation of the plan, and (2) to clarify ambiguities in the plan. *See, e.g. Winston & Strawn v. Kelly (In re Churchfield Management & Inv. Corp.)*, 122 B.R. 76 (Bankr.N.D.Ill.1990) (post-confirmation jurisdiction over avoidance and preference claims continues where the plan provides

for jurisdiction to be retained.); *Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001, 1007 (Bankr. N.D.Ill.1996) (citing cases); Fed. R. Bank. P. 3020(d).

■ Moreover, bankruptcy courts have core jurisdiction to interpret and enforce their orders. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir.2001); *In re Weber*, 25 F.3d 413, 416 (7th Cir.1994) (holding that bankruptcy court's interpretation of its own confirmation order is entitled to the same deference as accorded any court construing its own judgments).

### Core Jurisdiction Under Counts I, II, V, and VI

■ In this case, Linc's confirmed Plan provided for retention of jurisdiction over actions to avoid transfers, Zimmerman Exh. C, Art. IX, C.(vii), (xii), so core jurisdiction therefore lies over Counts I, II, V, and VI under 28 U.S.C. 157(b)(2)(H).

Count VII requests attorneys fees from the claims brought pursuant to Section 544. Section 550 provides the basis for such an award. *LFG, LLC v. Navarre*, 01 C 9451 2002 WL 1379112 at *3, 2002 U.S. Dist. LEXIS 11732 at *11 (N.D. Ill. June 27, 2002) (citing *In re Fugazy Express, Inc.*, 159 B.R. 432, 437 (Bankr.S.D.N.Y. 1993)).Core jurisdiction for Count VII therefore lies under 28 U.S.C. § 157(H).

### Related to Jurisdiction Lies Over Counts III and IV

■ Counts III and IV allege breach of contract claims. These Counts are state law claims. Although they originate from non-bankruptcy law, related-to jurisdiction exists for the primary purpose of determining all claims for and against the Debtor in the same forum and because these actions may benefit the estate. *See Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d

159, 161–162 (7th Cir.1994). Related-to jurisdiction lies under 28 U.S.C. § 157(c)(1).

## DISCUSSION

### Standards for Summary Judgment

Fed.R.Civ.P. 56(c) is applicable in this case pursuant to Fed. R. Bankr.P. 7056. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). *Tyler v. Runyon,* 70 F.3d 458, 464 (7th Cir.1995).

Summary judgment is granted to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis,* 806 F.2d 146, 149 (7th Cir. 1986). On a summary judgment motion, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *Marine Bank Nat'l Ass'n v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987). Existence of a material factual dispute is sufficient to block judgment only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motions and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, but its response must set forth specific facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. *Tyler v. Runyon,* 70 F.3d 458, 464 (7th Cir.1995). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### Linc's Plan of Reorganization Does Not Bar the Filing of this Adversary Complaint

■■ Because plans of reorganizations frequently require creditor approval, they are often consensus documents, subject to extensive negotiation and revisions among the Debtor and its creditors. Once a plan of reorganization is confirmed it functions as a court approved contract and the plan's terms and conditions are binding on the debtor and the debtor's creditors. *See Ernst & Young LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 755 (7th Cir. 2002) ("a confirmed plan of reorganization is in effect a contract between the parties"); *In re Harvey,* 213 F.3d 318, 321 (7th Cir.2000) (finding that a confirmed bankruptcy plan "acts more or less like a court-approved contract or consent decree").

Defendants do not dispute that they are bound by the Plan, rather they contest the

validity of a purported amendment to the Plan. The amendment, contained in the approved and entered order confirming the Plan, eliminated the bar date for filing certain claims against the Debtor's directors. If, as Defendants urge, the amendment is stricken or invalidated, this Adversary Complaint falls outside the bar date and must be dismissed.

Prior to confirmation, Article XI of the Plan provided:

> The filing of any suit or action against the Debtor's current or former officers and directors must be initiated on or before the later of (i)180 days after the Effective Date; or (ii) July 15, 2002 or the (sic) such suit or action will be forever barred, waived, and discharged; provided however, that any such suit, action, or proceeding commenced prior to that date may be amended or supplemented in any manner allowed by applicable law.

The Confirmation Order, however, included the following handwritten amendment: "H. Article XI of the Plan is amended by inserting the words 'Estate Claim' in lieu of 'any suit or action.' "

The Defendants insist that this amendment is invalid contending: (1) that the amendment does not comport with the agreement reached by the parties that claims against Linc's officers and directors would be subject to a bar date; (2) the doctrines of judicial and/or equitable estoppel prohibit Plaintiff from contradicting the Plan's bar date; and (3) the amendment makes the Plan ambiguous.

The handwritten amendment, and the other changes contained in the Confirma-

tion Order, were valid amendments to the Plan. First, the confirmation order states in plain and express terms that it is amending the Plan:

> "it is hereby ordered that: The Amended Plan of Reorganization ... as *amended hereby* (the 'Plan'), be and is hereby confirmed." (italics supplied).

The phrase "as amended hereby" clearly indicates that the subsequent changes are amendments that will be incorporated into the confirmed Plan. The meaning of this phrase and the significance of the amendments that follow is unambiguous.

Second, neither Defendant raises an issue of impropriety in the disclosure of the contents of the Confirmation Order before the hearing or that they were unaware of the changes contained in it. To the contrary, both Zimmerman and Palles closely followed and participated in the Plan's formation and drafting. Palles, for instance, personally drafted versions of the Plan and disclosure statement. Palles' Statement Exh. G, Palles Affidavit ¶ 3.

Both Defendants were timely and validly served with advanced notice of the contents of the Confirmation Order [2] and were afforded an opportunity to object at the confirmation hearing. Neither Palles nor Zimmerman objected. Palles chose instead to testify in support of the Plan. Approval of the Confirmation Order approved all amendments, handwritten or otherwise, contained in that order.

### *As Amended by the Confirmation Order, the Plan Does Not Bar the Present Litigation*

■ As Amended Article XI of the Plan reads:

---

**2.** The circumstances here are far different than those of Mr. Charles J. Aschauer, another former director of the Debtor. Plaintiff attempted to sue Aschauer even though Aschauer was never served or provided notice of an extension of the deadline to file claims against the Debtor's directors and officers. *Cavanaugh v. Zimmerman (In re Linc Capital, Inc.),* 296 B.R. 474 (Bankr.N.D.Ill.2003) held that the extension of the deadline without Aschauer's notice or consent violated his rights of Due Process.

The filing of *Estate Claims* against the Debtor's current or former officers and directors must be initiated on or before the later of (I)180 days after the Effective Date; or (ii) July 15, 2002 or the *Estate Claims* will be forever barred, waived, and discharged; provided however, that *Estate Claims* or proceeding commenced prior to that date may be amended or supplemented in any manner allowed by applicable law. (Emphasis supplied)

The Plan, as amended, establishes a bar date for Estate Claims. Estate Claims are defined as:

any and all claims and/or causes of actions and/or enforceable rights of the Debtor, which may be asserted ... arising from or in connection with any prepetition conduct, actions and/or omissions relating in any manner to the Debtor, against any third party, including without limitation, the Debtor's current and/or former officers and directors ... *provided, however, that Estate Claims shall not include (1) Lease–Related Claims; (2) Avoidance Actions.* Palles Exh. A, Article I, B.23 (Emphasis supplied)

Avoidance Actions are expressly exempted from the definition of Estate Claims. The Plan further defines Avoidance Actions as "actions which may be brought under any of the provisions of sections 541 and 544 through 553 of the Bankruptcy Code." Palles Exh. A, Article I, B.4. The claims asserted against the Defendants in this Adversary are brought under 11 U.S.C. §§ 544 and 550. They are Avoidance Actions as defined in the Plan and are not subject to any time limitation or bar date.

Defendants argue that even if the Confirmation Order amended the Plan, subsequent motions to extend the bar date do not indicate that Avoidance Actions are separate from Estate Claims. Palles'

Brief at 2–3. This fact does not help the Defendants. The motions to extend the bar date did not alter or amend the Plan's definition of Avoidance Action or Estate Claims.

Because the Plan does not provide a deadline for Avoidance Actions, the filing of this Adversary Complaint does not breach the Plan provisions.

 The Defendants object further that even if the Plan does not bar this Adversary, the Plaintiff induced them into agreeing to extend the bar date by misrepresenting in court that the bar date applied to Avoidance Actions, or by joining in motions to extend the bar date. According to the Defendants the doctrines of equitable and judicial estoppel prohibit denying the bar date now. Palles Reply Mem. at 4.

 Both doctrines are inapplicable here. Equitable estoppel arises "when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Citation Cycle Co. v. Yorke*, 693 F.2d 691, 695 (7th Cir.1982), and requires (1) the party to be estopped must know of the facts and must intend, or lead the other party to believe it intended, that its conduct will be acted upon; (2) the party seeking estoppel must be ignorant of the true facts; (3) the party asserting the estoppel must have actually and reasonably relied on the words or conduct; and (4) the reliance must have caused the party asserting the estoppel injury. *McConahey v. United States (In re McConahey)*, 192 B.R. 187, 192 (Bankr.S.D.Ill.1996). As stated previously, all the Defendants possessed the terms of the Plan and subsequent amendments prior to confirmation and all had ample opportunity to study the Plan and assess its effects. The second element of estoppel has not been met.

Judicial estoppel arises where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . assume a contrary position." *State of New Hampshire v. State of Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). "Judicial estoppel is an equitable concept invoked at a court's discretion" and designed "to prevent the perversion of the judicial process." *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002). Courts generally consider two factors. First, "it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268 (11th Cir.2004).

Alternatively to arguing that Defendants misrepresented, Plaintiff asserts that they took the position with regard to motions to extend the deadline that there was a deadline, a position now reversed. The Plan originally established a bar date for Avoidance Actions, but subsequent amendments removed that bar date.

There were no misrepresentations demonstrated, nor does participation in a motion to extend a possible deadline as a safety measure foreclose one from arguing later that the deadline doesn't apply. Based on all the circumstances, it must be concluded that the doctrines of judicial and equitable estoppel are inapplicable.

Although Palles and Zimmerman clearly desired to insulate themselves from post-bankruptcy liability they should have vigilantly protected their interests through the entire plan confirmation process. If they opposed the amendments contained in the Confirmation Order, they had notice of those changes and could and should have objected at the hearing. But they did not and the Confirmation Order validly amended the Plan. Article XI of the Plan does not prescribe a bar date for avoidance actions and thus does not bar this Adversary.

## *RES JUDICATA*

Defendants alternatively assert that the doctrine of res judicata precludes the present litigation. The term "res judicata" is synonymous with the concept of "claim preclusion," which refers to "the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been litigated in an earlier suit." *LaSalle Nat'l Bank of Chicago v. County of DuPage,* 856 F.2d 925, 930 n. 2 (7th Cir. 1988).

The doctrine of res judicata bars relitigation of claims that were or could have been litigated in a prior proceeding. *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York,* 112 F.3d 257, 259 (7th Cir.1997). Because the prior litigation (the D & O lawsuit) was brought in federal court, federal rules of res judicata apply. *EEOC v. Harris Chernin, Inc.,* 10 F.3d 1286, 1289 n. 4 (7th Cir.1993) ("Where the earlier action is brought in federal court, the federal rules of res judicata apply."); *Barnett v. Stern,* 909 F.2d 973, 977 (7th Cir.1990). Accordingly, federal common law res judicata principles apply to determine whether Plaintiffs' claims are barred by the D & O lawsuit.

Under federal law, res judicata bars a lawsuit if three conditions are met: 1) a court of competent jurisdiction rendered a final decision on the merits in an earlier action; 2) an identity of causes of action between the earlier and later proceedings; and 3) an identity of parties or their privies in the earlier and later proceedings. *D & K Properties,* 112 F.3d at 259.

### *Final Decision on the Merits*

 The order dismissing the prior action, the D & O litigation, was dismissed "with prejudice" indicating that the order was a final decision on the merits for purposes of res judicata and bars any subsequent suits on the same cause of action. *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1235 (7th Cir.1987) ("A dismissal with prejudice is a final judgment on the merits which will bar a second suit between the same parties for the same cause of action.") (quoting *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir.1971)).

### *Plaintiff has Pleaded Related Claims*

 An identity of causes of action exists when both the prior and subsequent claims arise out of the same transaction, defined for res judicata purposes as "a single core of operative facts giving rise to a remedy." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986); *Alexander v. Chicago Park District*, 773 F.2d 850, 854 (7th Cir.1985), *cert denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894.

 Two claims are one for purposes of res judicata if they are based on the same, or nearly the same factual allegations. *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223 (7th Cir.1993). Plaintiff argues that the instant case does not arise from the same transaction as pleaded in the other case. According to Plaintiff, the crucial factor distinguishing the D & O litigation from this suit is that the earlier case pleaded causes of action against Zimmerman and Palles in causing the transfers as officers of Linc, while the instant case concerns their liability as beneficiaries of the assets transferred. Pl.'s Resp at 9–10.

The problem with the Plaintiff's argument is that the essential facts underlying both lawsuits are the same. Both lawsuits originate from the alleged fraudulent transfers in 1997. No significantly different facts are at issue in this litigation. Indeed, Plaintiff Amended Complaint tracks many allegations contained in the D & O complaint.

 Plaintiff replies further that 11 U.S.C. § 550 supercedes or creates an exception to the doctrine of res judicata. Section 550 states:

> Liability of transferee of avoided transfer
>
> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

Section 550 establishes liability only after an initial transfer is avoided pursuant to another section of the Code. The section thus enacts a two-step process of recovery. Plaintiff reasons that Section 550 authorizes it to bring suit against a party to avoid a transfer and a subsequent suit to recover from the same party as a beneficiary of the transfer. This reasoning is at odds with the Rules of Civil Procedure, which permits and encourages pleading in the alternative. Fed.R.Civ. P. 8(e). Nothing prevented the Plaintiff from pleading in the alternative in the D & O litigation. And even though it appears that LFC Holdings did not exist when the D & O Complaint was filed and settled, that did not prevent suit at the time against Palles and Zimmerman on the theories now pleaded.

Moreover, Plaintiff's interpretation of Section 550 would mean that the same

transactions here, the transfers, would give rise to multiple claims in different suits against the same parties. This approach has been rejected by the Second Restatement of Judgments. Restatement (Second) of Judgments § 24 cmt. a (1982) ("Claim, in the context of res judicata has never been broader than the transaction to which it related.")

Plaintiff relies on the holding of *Weinman v. Simons (In re Slack–Horner Foundries Co.)*, 971 F.2d 577 (10th Cir. 1992). In *Weinman*, 971 F.2d at 580, the Tenth Circuit held that in order to recover under Section 550 from a subsequent transferee, the bankruptcy trustee must first have the transfer of the debtor's interest to the initial transferee avoided.

Plaintiff contends that Palles and Zimmerman in their capacity as officers of Linc were the initial transferees. When they transferred the assets to LFC, Palles and Zimmerman as officers of LFC, became the subsequent transferees. Pl.'s Resp. at 9–10. Plaintiff interprets *Weinman's* holding as requiring that it bring one suit against Zimmerman and Palles to avoid the transfer and a second separate suit to recover the transfer.

In *Weinman* the state of Colorado conducted a tax sale of the debtor's property for nonpayment of property taxes. The trustee attempted to avoid the sale of the property and brought suit against the purchaser, Simons. The Tenth Circuit held that the state of Colorado was the initial transferee. *Id.* at 579–580. The trustee, as a result, could not bring suit against the purchaser until it recovered from the state. The required recovery was not sought in that case from the state.

*Weinman* involved different parties and its holding does not support Plaintiff's construal of Section 550. Likewise, the other cases cited by Plaintiff, *Contemporary Indus Corp v. Frost (In re Contemporary Indus Corp)*, 2001 Bankr.LEXIS 2132 (Bankr.D.Neb. Feb. 14, 2001); *Greenwald v. Latham & Watkins (In re Trans–End Tech. Inc.)*, 230 B.R. 101, 104 (Bankr. N.D.Ohio 1998); *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D.Cal.1996), are equally unavailing. None of the cases stand for the proposition that the same party or an entity in privy with that party, may be subject to multiple litigation. Indeed, they do not stand for the proposition that two separate suits must be filed, and the practice in this District has been that both are joined in one action.

While the avoidance of a transfer and recovery for that transfer are distinct concepts in bankruptcy law, Plaintiff's construal of Section 550 is at odds with authority applicable here.

 Traditional principles of res judicata permit additional litigation if some new injury occurs, as distinguished from new evidence of the past wrong. *Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir.1992) Plaintiff has not asserted any new wrongful conduct by Zimmerman and Palles or a new injury. The primary change from the previous suit appears to be that the Plaintiff has asserted different legal theories and included additional corporate entities, LFC and LFC Holdings. It is, however, well established that a mere change in legal theory does not create a new cause of action for purposes of res judicata. *Alexander*, 773 F.2d 850, 854 (7th Cir.1985); 18 Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4407 (2002); *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 945 (7th Cir.1981) ("An unsuccessful party may not ... frustrate ... res judicata by cloaking the cause of action in the language of a theory untried in the previous litigation."). Plaintiff's interpretation

of Section 550 is rejected, that Section does not supercede or create an exception to the doctrine of res judicata.

### Identity of Parties

In the D & O lawsuit, Plaintiff sued Palles and Zimmerman; if Palles and Zimmerman were now found to be in privy with LFC Holdings, then res judicata recognizes them as the same party and bars this Adversary against LFC Holdings. However, that is not the case.

■ Res judicata precludes a subsequent action against a party or its privy. *In re L & S Industries, Inc.*, 989 F.2d 929 (7th Cir.1993). Defendants Zimmerman and Palles were named parties in the D & O litigation. Plaintiff therefore may not bring claims against them.

■ Defendant LFC Holdings was not a named party in the prior litigation, and Plaintiff contends that res judicata does not apply to it. LFC Holdings asserts that privity exists between it and Zimmerman since Zimmerman is a majority shareholder and LFC Holdings is a closely held corporation.

■ The general rule is that, absent other factors, there is no privity between a corporation and its shareholders. *L & S Indus.*, 989 F.2d at 934 ("privity does not automatically arise from the relationship between a corporation and its shareholders. Some additional link is necessary."); 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.40 (3d 2003). The Second Restatement states:

> a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation, nor does a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation have

preclusive effects on the corporation itself.

Restatement (Second) of Judgments, § 59 (1982).

■ Notwithstanding the general rule, some exceptions are made. Privity is recognized for closely held corporations if (1)the shareholder brings a derivative suit or (2) the majority shareholder participated in the prior litigation on the corporations behalf. *See,* e.g., *L & S Indus.*, 989 F.2d at 934 ("The right of a shareholder to bring a derivative suit is based on an existing right of action accruing to the corporation. In other words, the primary right of action sought to be enforced belongs to the corporation. If the corporation asserts this right, principles of preclusion would prevent a shareholder from subsequently asserting that same right."); *In re Belmont Realty Corp.*, 11 F.3d 1092, 1097 (1st Cir.1993) (privity existed between closely-held corporation and officer/shareholder when she participated in negotiations related to loan that was the subject of litigation and was very active in prior bankruptcy proceedings asserted as basis for preclusion); *Cramer v. General Tel. & Elec. Corp.*, 582 F.2d 259, 267 (3d Cir.1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979) (claim preclusion barred shareholders' derivative suit against corporate officers following dismissal of identical claim by different shareholders because plaintiff (corporation) was same in both actions); Restatement (Second) of Judgments § 59(3)(a), (b) (1982).

Under either of those exceptions, persons considered to be in privity with the corporation will be bound by a judgment against the corporation and the corporation will be bound by a judgment against the shareholder.

Neither exception applies here. First, this is not a derivative suit brought by Zimmerman for LFC Holdings' benefit. Second, Zimmerman could not have participated in the D & O litigation on behalf of LFC Holdings because their interests appear to conflict. If, as Plaintiff asserts, Zimmerman orchestrated the 1997 transfers, Zimmerman may be personally liable to LFC Holdings. *See*, e.g. Restatement (Second) of Judgments, § 59 ("However it can happen that a substantial proprietor in a corporation finds himself in conflict with the corporation's management or with other stockholders, and in an antagonistic position regarding issues litigated by the latter. The rule of issue preclusion should not be applied in such circumstances.") Thus it is clear that LFC Holdings was not represented in the D & O litigation and any judgment resulting in that litigation is not binding on it. LFC Holdings is not in privity with Zimmerman and res judicata does not preclude Plaintiff from proceeding against it in this Adversary.

### The Settlement Agreement did not Preserve the Claims here Against Palles and Zimmerman

 Plaintiff's final argument against res judicata is that the Settlement Agreement in the D & O litigation expressly reserved its right to litigate the claims here in a later proceeding. This argument is based on a generally accepted exception to the res judicata doctrine—that a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action. *D & K Prop.*, 112 F.3d at 260; *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624 (7th Cir. 2002).

 The Settlement Agreement reached in the earlier D & O case contained a provision authorizing the Plaintiff to pursue claims in a subsequent action (described as a "carve-out" by the parties.) However, neither Palles nor Zimmerman signed the Settlement Agreement, therefore the carve-out provisions cannot apply to them. The provisions of a settlement agreement are not binding on a non-settling party.

Plaintiff instead makes a tortured argument that the carve-out provisions were incorporated into the D & O litigation by the dismissal order and bind Zimmerman and Palles by implication. Pl.'s Brief at 8. The dismissal order contained no such language expressly, and no such terms can reasonably be implied.

The three conditions of res judicata—same claims, same parties and final judgment on the merits—have been satisfied with regards to Defendants Palles and Zimmerman. But res judicata does not preclude the claims against LFC Holdings since it was not in privity with Zimmerman.

### CONCLUSION

For the foregoing reasons, the motions of Palles and Zimmerman for summary judgment is granted in Counts V and VI of the Second Amended Complaint. The doctrine of res judicata bars each of these as to Zimmerman and Palles.

 As to Count VII's prayer for attorneys fees, Section 550 authorizes the recovery of attorneys fees for the benefit of the estate, to the extent that a transfer has been avoided under Section 544. Since res judicata bars Section 544, the recovery of attorneys fees is similarly barred. Therefore, the Zimmerman and Palles requests for summary judgment in Count VII are also allowed.

The motion of LFC Holdings for summary judgment is denied since res judicata

does not bar Counts V, VI, and VII as to that Defendant.

A separate order and judgment consistent with these rulings will be entered and Pretrial Order will be entered setting trial on the remaining issues and Counts.

Pursuant to Rule 56(d) Fed.R.Civ.P. [rule 7056 Fed.R.Bank.R.], ¶¶ 1 through and including 24 of the Undisputed Material Facts set forth herein above are deemed established for trial and the order will provide for their admission into evidence.